CHRISTIAN J. ZEITINGER et al., Appellants; THOM-
AS F. MOYLAN et al., Interveners, Appellants, v.
HARGADINE-McKITTRICK DRY GOODS COM-
PANY.

In Banc, July 3, 1925.

1. **RECEIVER: Appeal from Interlocutory Order: Jurisdiction to Re-
voke Order.** Where the main relief sought is the appointment of a
receiver for a corporation, and such appointment not a mere in-
cident to the proceeding, and an appeal is taken from the inter-
locutory order appointing a receiver, this court, under the statute
(Sec. 1469, R. S. 1910), has jurisdiction to reverse and remand the
cause with directions to the circuit court to dismiss the cause and
restore the corporation to its property, and to incorporate in its
judgment terms and conditions stipulated by the parties.

2. **STIPULATION: Authority of Attorney: Ratification: Jurisdiction
to Render Consent Decree.** Where plaintiffs were in court and con-
sented verbally to stipulations entered into by their attorney in
their behalf, and to a consent decree entered in pursuance to such
stipulations, and afterwards in writing ratified his act in signing
them, particularly so where they received money as an element of
such stipulated settlement, they are bound thereby; and such
stipulations and settlement being beyond recall, and the plaintiffs
having accepted the benefits thereof, it is immaterial whether or
not the court had jurisdiction to render the consent decree .

3. **SETTLEMENT OF SUIT: Agreement to Appoint Trustee: Disap-
pointment.** Where the paper signed by plaintiffs' attorney au-
thorized him "to represent them in all negotiations for a compro-
mise and settlement growing out" of a certain cause for the ap-
pointment of a receiver of a corporation, wherein this court has
revoked the order appointing a receiver and directed that the cor-
poration be restored to the property and that the circuit court
make further orders relating to a settlement according to stipula-
tions of the parties filed, which agreement stated that the attorney
should appoint a trustee to make the settlement, but did not say
that the plaintiffs should do so, and said attorney tried to have one
of plaintiffs appointed, but did not succeed in doing so, because
overridden by the votes of other stockholders, the failure of one
of plaintiffs to secure said appointment in no way affected the
validity of their ratifying agreement appointing said attorney to
represent them in the settlement, although the expectation that he
309 Mo. Sup.—28.

would be appointed was their chief reason for entering. into the agreement.

4. **SETTLEMENT OF CLASS SUIT:** Authority of Plaintiffs: Consent Decree: How Far Binding: Appointment of Receiver. A . suit brought by certain stockholders for themselves and all other stockholders for the appointment of a receiver is a class suit, and the appointment of a receiver having been revoked, and stipulations for a settlement having been entered into by all the parties for a consent decree, signed either by the parties themselves, or by their attorneys and their execution subsequently ratified in writing signed by their clients, and a consent decree having been entered in accordance with such stipulations, not only the stockholders who were then actual parties, but all the stockholders not parties, were bound by said stipulations, and could not afterwards repudiate or recall said settlement or have reopened the action of the court in entering judgment in accordance therewith, either as interveners or otherwise, and a motion filed by the actual plaintiffs or by intervening stockholders, asking that a receiver be appointed, should be dismissed. Justice does not require that other stockholders be permitted to intervene and litigate all over again matters that were previously settled in the suit brought by the original plaintiffs wherein it was determined that there was no sufficient ground for the appointment of a receiver.

---

Corpus Juris-Cyc. References: **Appeal and Error,** 4 C. J., 2564c p. 672, n. 97 New; Section 3223, p. 1187, n. 80, Section 3271, p. 1221, n. 58, p. 1222, n. 60 New. **Judgments,** 34 C. J., 1466, p. 1034, n. 65. **Stipulations,** 36 Cyc. p. 1292, n. 69; p. 1293, n. 72; p. 1299, n. 32.

Appeal from St. Louis City Circuit Court.—*Hon. Vital W. Garesche,* Judge.

AFFIRMED.

*Christian F. Schneider, Edward W. Foristel* and *Walter M. Hezel* for appellants.

(1) The judgment of the Supreme Court on the stipulations was outside of the limit of its appellate jurisdiction, *coram non judice* and void, and therefore the circuit court had no authority in law to act on said mandate. Tuttle v. Blow, 163 Mo. 643; Elliot's App. Pro. secs. 97, 100. (a) The attorneys in agreeing to a com-

promise of the claim were without authority of their clients and the compromise and payment thereunder would be no bar. Davidson v. Rozier, 23 Mo. 387; Spears v. Ladergerber, 56 Mo. 465; Walden v. Graham, 55 Mo. 405. (b) If the judgment of the Supreme Court was void for want of jurisdiction, it never became good, and was open to collateral attack as well as to direct attack. Church v. McIlhenney, 61 Mo. 543. (2) The circuit court erred in making its order sustaining the motion of the Hargadine-McKittrick Dry Goods Company praying for an order to show cause in this, that the proof failed to show that the stipulations on which the judgment of the Supreme Court was rendered and its mandate issued were lawful and valid stipulations, or that the same had been authorized in writing or ratified by the plaintiffs or the interveners or either of them. (3) The circuit court erred in making its order sustaining the motion of the Hargadine-McKittrick Dry Goods Company praying for an order to show cause, in this, that the conditions of the stipulations were not complied with.

*Charles P. Williams* and *Nagel & Kirby* for respondent.

(1) The judgment and mandate of the Supreme Court, issued in this Zettinger receivership suit on February 5, 1919, were within the jurisdiction of this court, and constituted valid authority to the circuit court to carry out the directions of said mandate. (a) The same contention that this court had no such jurisdiction has been urged upon this court twice before in other branches of this litigation, without finding favor. See the briefs in State ex rel. Hargadine-McKittrick Co. v. Garesche, 227 S. W. 830; Kaufman v. Annuity Realty Co., 256 S. W. 796. (b) This Zeitinger suit for a receiver was a "class" suit. Kaufman v. Annuity Realty Co., 256 S. W. 797. (c) In a representative or class suit like this Zeitinger case, the litigating stockholders as the representatives or agents of all the stockholders, have pow-

er to control and compromise the claims sued upon. 3 Cook on Corps. (7 Ed.) sec. 748, p. 2738; Willoughsby v. Chic. J. Ry., 50 N. J. Eq. 666; Innes v. Lansing, 7 Paige (N. Y.) 585; 15 Encyc. Pl. & Pr. 627, 635, 637; Brinkerhoff v. Bostwick, 99 N. Y. 194. The compromise of such a suit, negotiated and concluded by the suing stockholders, and sanctioned by the court, as in the case at bar, is binding on all of the stockholders, whether they are parties to the suit or not, and whether they consent or not. Johnson v. Miller, 96 Fed. 274; Bernheim v. Wallace, 217 S. W. (Ky.) 921; Belmont Nail Co. v. Columbia Co., 46 Fed. 338; Fay v. Erie Bank, Harr. Eq. (Mich.) 194. (d) The appeal to this court from the judgment of the circuit court appointing a receiver, brought into consideration the merits of all of the alleged claims of the company against the various defendants and thus drew into consideration all of the subject-matters that were compromised by the stipulations of settlement; therefore this court did not go outside the subject-matter of its jurisdiction in approving the settlement. (2) The circuit court did not err in making its order of February 20, 1922, by which it held that all of the stockholders were bound by the settlement. The only stockholders before this court on this appeal are the plaintiffs, the two Zeitingers. They are bound by the settlement because the findings of the circuit court are supported by the substantial weight of the evidence showing: (a) That they authorized the settlement to be made; (b) That they expressly ratified the settlement in writing, after it had been made; (c) That they and all other stockholders are estopped by their laches, acquiescence and conduct, from denying that they are bound by the settlement. State ex rel. v. Garesche, 227 S. W. 830; Dana v. Morgan, 219 Fed. 316. (3) The final judgment of this court entered on February 5, 1919, reversing and remanding the cause with directions to the circuit court to carry out the stipulations of settlement and then to dismiss the cause, is not open to attack in this proceeding on the ground that this court was in-

duced by fraud to enter said judgment: (a) Because appellants learned on February 7, 1919, of the facts on which they now base their attack on said judgment, but they neglected their opportunity during the rest of the said October term, 1918, of this court, to make a direct attack in this court on the judgment. (b) Because the circuit court had no jurisdiction in this proceeding under the mandate, to entertain an attack on the integrity of a judgment and mandate of the Supreme Court. The jurisdiction of the circuit court was limited to carrying out the directions of the mandate. Rees v. McDaniel, 131 Mo. 682; Powell v. Bowen, 240 S. W. 1087; Stump v. Hornback, 109 Mo. 277. (c) Because the attack here attempted is in effect a collateral attack.

SMALL, C.—Appeal from the Circuit Court of the City of St. Louis.

This suit in equity was instituted in 1915 by the plaintiffs, Christian J. and George E. Zeitinger, and Gus Ralph, as plaintiffs for themselves and in behalf of all other stockholders of the defendant corporation, Hargadine-McKittrick Dry Goods Company, then in liquidation, to have a receiver appointed for said corporation, on the ground that the officers of said company had unlawfully invested a large amount of its assets in the Railway Exchange Building Company of said city and otherwise mismanaged its affairs. On the application of plaintiffs, by an interlocutory decree, the court made an order appointing a receiver, and refusing to modify said decree the defendant Dry Goods Company appealed to this court.

The cause came before Division Two and in pursuance of stipulations of the then parties to the suit, the interlocutory order appealed from was reversed and the cause remanded with directions to dismiss said cause on certain terms and conditions as provided by such stipulations. Our mandate was issued and dated February 5, 1919, and was filed in the circuit court on the same day. Said mandate was as follows:

"Now, at this day, come the said parties, by their respective attorneys, and, pursuant to their stipulations heretofore filed herein on the 31st day of January, 1919, and on the 5th day of February, 1919, it is considered, ordered and adjudged by the court as follows: (1) That the interlocutory decree of the said circuit court, rendered herein on the 8th day of January, 1917, be, and the same is hereby, reversed, with all costs against said appellant; (2) That this cause be, and the same is hereby, remanded to the said Circuit Court of the City of St. Louis, with directions to said circuit court to tax against the appellant the costs, including reasonable compensation to the receiver for his administration of the estate of the said appellant, together with all reasonable attorneys' fees and other costs or expenses which the said receiver has incurred in the administration of the estate, and also the compensation due plaintiffs' (respondents') attorneys for their services, with disbursements, and the compensation due the referee and the attorneys for the appellant for their services, with disbursements, and to order all costs paid as and when allowed out of the corpus of the estate now in the hands of the receiver, and to make such further orders and entries as may be necessary to dispose of the litigation and estate in the said circuit court, in accordance with said stipulations of the parties filed in this court and those heretofore executed and to be filed in said circuit court, and thereupon to dismiss the plaintiffs' (respondents') petition herein in accordance with the said stipulations."

We are satisfied from the evidence that two stipulations were on file in this court at the time its decree was made, one dated February 3, 1919, and the other February 5, 1919, the date of the decree in this court. Three other stipulations, all dated January 30, 1919, were exhibited to the judges of Division Two, and considered by them in making said decree, but not left with the clerk or the court, but were filed in said circuit court as contemplated by said decree. These original stipulations were lost and could not be produced at the trial

now before us, but copies thereof were produced and put in evidence.' These stipulations purported to authorize this court to make the decree of reversal, with directions shown by said mandate. Said stipulations were not signed by the plaintiffs Christian J. and George E. Zeitinger, personally, but their names were signed thereto by their attorney, Julian Laughlin. All the other then parties to the suit signed said stipulations in person or by their attorneys. As a part of said settlement, one of said stipulations, dated January 30, 1919, executed by Julian Laughlin as attorney for plaintiffs and Robert McK. Jones and Matt Reynolds as a committee representing the holders of certain securities and bonds made by the Railway Exchange Building Company, provided that the settlement should have the effect of dismissing a certain equity suit which the receiver had brought against said Railway Exchange Building Company, in consideration of which the said committee would deliver to the trustees of the Dry Goods Company provided for by one of said stipulations, $150,000 par value of the first preferred stock of the Dry Goods Company, and $75,000 of the first mortgage bonds of the Railway Exchange Building Company, provided: "That if said stipulations (for settlement) are signed by any attorney or agents such attorney or agent shall deliver his or their written authority to act and bind his or their principals, before the trustees, hereinafter named, shall be called upon to deliver up any of the stocks or bonds herein mentioned." One of the stipulations also provided for the appointment of two trustees to take charge of the Dry Goods Company's property—one to be chosen by the attorneys for plaintiffs and one by the attorneys for defendants. Also that all then existing interveners should be considered plaintiffs.

On January 26, 1920, the plaintiff, Dry Goods Company, filed a petition or motion in the case, stating the fact of the reversal by this court on February 5, 1919, of the order appointing a receiver, and the contents of our mandate and the filing of same in the circuit court

on the same day, February 5, 1919, and of the making and filing in this court and the circuit court of the stipulations for settlement. That as required by said settlement the receiver had surrendered to Thomas T. Fauntleroy and R. McK. Jones, the trustees provided for by such settlement, all the property on his hands, and that said trustees are ready and willing to turn over all assets to the company as soon as all the conditions of the settlement are performed.

That all the costs and in effect all other things provided by the settlement had been done and the Dry Goods Company was willing to elect a director to be named by plaintiffs, as required by the terms of the settlement, but that Julian Laughlin, Randolph Laughlin and Matt G. Reynolds, who signed said stipulations for settlement as attorneys for plaintiffs Zeitingers and certain interveners, had not delivered to said trustees written authority to act for and bind the said plaintiffs and interveners in signing said stipulations for settlement, and until they do so said trustees are not entitled to receive and turn over to the Dry Goods Company the $150,000 of its preferred stock and the $75,000 of bonds of the Railway Exchange Building Company agreed to be delivered as part of said settlement by the committee for the bondholders of said Railway Exchange Building Company.

That said stipulations and mandate of the Supreme Court and proceedings of the circuit court under which the receiver paid out and disposed of the assets in his hands, were all matters of record in the cause and of which the plaintiffs and interveners had knowledge and notice, and they participated in all such proceedings and stood by and failed to object, but consented thereto and acquiesced in the validity of said stipulations and mandate as binding upon them until the *status quo* had been substantially altered under said mandate and stipulations, and to permit plaintiffs and interveners to now question the validity of said mandate and stipulations would cause irreparable injury to the defendant Dry Goods Company. The prayer is that the court require

plaintiffs and interveners to show cause why an order should not be made finding that they authorized their attorneys to sign said stipulations or ratified or were estopped to deny the authority of their attorneys to sign the same, and that said stipulations are binding on them, and further directing Julian Laughlin, Randolph Laughlin and Matt G. Reynolds to file in court all further written evidence of their authority or ratifying their authority to sign such stipulations for settlement, which they may have, and for a further order directing said trustees to deliver all the property of the Dry Goods Company in their possession to it, and for said R. McK. Jones to deliver to said company the $150,000 in preferred stock and $75,000 in bonds agreed to, turned over to it by him, and for all relief necessary to carry out said stipulations for settlement and mandate of the Supreme Court.

The plaintiffs, Christian J. and George E. Zeitinger and the Ralph heirs and administrator, made return or answer to said petition on motion of the Dry Goods Company, which put in issue the authority of said attorneys to execute said stipulations and all other matters stated in said petition or motion, and further set up that the Supreme Court was without jurisdiction to make said decree and mandate which disposed of said cause on its merits for the reason that the appeal before it was not from a final judgment on the merits, but from a mere interlocutory order refusing to set aside the appointment of a preliminary receiver. Also that said consent decree of the Supreme Court was obtained by fraud upon the court in that the plaintiffs' attorneys were not authorized to consent to it as they represented to the court. The reply of the Dry Goods Company put the allegations of such returns or answers in issue.

After hearing the evidence the court, January 20, 1922, rendered a decree as prayed for by the petition or motion of the respondent Dry Goods Company, from which the Zeitingers appealed to this court.

The crux of the case is whether appellants Christian J. and Geo. E. Zeitinger signed and delivered to their

attorney, Julian Laughlin, a writing, known as Exhibit 12 in the record, confirming his action in making said settlement of the case. Said Exhibit 12 is as follows:

"IN THE CIRCUIT COURT CITY OF ST. LOUIS, MISSOURI.

"C. J. ZEITINGER ET AL., Plaintiff,

"v.

"HARGADINE MCKITTRICK DRY GOODS CO. ET AL., DEfendant.

"Mr. Julian Laughlin was authorized to represent the undersigned Christian J. Zeitinger and George M. Zeitinger, plaintiffs in the above entitled cause, in all negotiations for a compromise and settlement of the entire litigation growing out of the above entitled cause, and we hereby ratify and affirm the compromise and stipulations entered into on that behalf. We were present in Court Room No. 13 on Friday, February 7, 1919, when the matter of an allowance of attorneys' fee in connection with the above cause was being heard by Judge Garesche.

"February 17th, 1919.

"CHRISTIAN J. ZEITINGER
"GEO. E. ZEITINGER."

Respondents evidence as to the execution of said instrument was substantially as follows:

Julian Laughlin testified he represented plaintiffs C. J. Zeitinger and Geo. Zeitinger and Gus Ralph and the original plaintiffs in the cause until after the mandate of the Supreme Court and the stipulations had been filed in the case. C. J. Zeitinger was the leader. He took no direct part in the negotiations for the settlement in connection with the settlement. He did not see Mr. Ralph, but he saw both C. J. and Geo. E. Zeitinger several times. On objection of respondents, witness was not permitted to state what conversations he had with the Zeitingers concerning the stipulations or settlement. The negotiations went on several months, and were carried on by Mr. Randolph Laughlin on plaintiffs' behalf, and Mr. Fauntleroy and Mr. Kirby and various others on the other side. Prior to the time when the stipulations were

signed and delivered he had in his possession written authority from the Zeitingers and Ralph to enter into those stipulations. Objection to this testimony on the ground that the writing was the best evidence was sustained. He was sole attorney for the Zeitingers and Ralph at the beginning. He did not go to the Supreme Court in connection with the stipulations, but he signed the stipulations which were the basis for the mandate remanding the case for disposition by the circuit court. Before the stipulations were signed he had a letter or paper signed by the Zeitingers relating to the settlement, but none signed by Ralph's administrator, relating to the settlement itself. The paper he had from the Zeitingers prior to the signing of the settlements was turned over to the trustees as he remembered. It was necessary to file that in order to vote on who should be trustee and he filed it with somebody, did not remember just then with whom. Had communications with administrator of Gus Ralph, which letter was dated March 27, 1919, and was introduced in evidence as defendants Exhibit 11. He attended all hearings of the case after the mandate came down to the circuit court, when allowances of fees to plaintiffs' attorneys were made and paid. His recollection was that the Zeitingers attended and were present in person at those hearings. He still represented them as their counsel at those hearings, and continued to represent them at all hearings until the latter part of June or July, 1919, when they discharged him. The allowances to plaintiffs' counsel were paid in June, 1919. His fee was $25,000. Up to the time he was discharged, nothing was said by the Zeitingers or anyone on behalf of Gus Ralph to the court attacking the authority of the attorneys to sign the stipulations on behalf of the parties. He did not hear anything of the kind and was present at all such decisions in court. After he was discharged he had conversations with the Zeitingers in reference to the compromise. Before he was discharged he had a talk with the Zeitingers about their sharing in Mr. Fauntleroy's fee. He dictated said Exhibit 12, to

Miss Quisenberry, stenographer. She wrote it on the typewriter and he was present when it was signed by Christian J. Zeitinger and Geo. E. Zeitinger. The date on that paper "February 17, 1919," to the left of the signature of Geo. E. Zeitinger, is in the handwriting of Christian J. Zeitinger. He saw him write in that date and saw them both sign that paper. Everything on that paper was there when the Zeitingers signed it. The paper was written by the typewriter or stenographer as one act and nothing has been added to it other than the signatures and the date. It was just as it is now, no open spaces. At the same time he prepared another paper. It was an agreement that he would elect C. J. Zeitinger trustee. He signed it intending to have Mr. Randolph Laughlin and Judge Reynolds sign it also. (They were the attorneys who represented all the other plaintiffs and interveners in the case). He gave that paper to Mr. Schneider, attorney for the Zeitingers, about two weeks before he testified. Mr. Schneider agreed to produce it. (It is not shown in the record). Cannot say whether he showed it to the Zeitingers at the time they signed Exhibit 12. It had been his custom for forty-four years to keep a memorandum of dates and to some extent subject-matters of his conferences with his clients. Refreshing his recollection from such memorandum on the same date that Exhibit 12 is dated in ink, February 17, 1919, he made a memorandum in his diary to the effect that on that date the Zeitingers signed stipulation for compromise. A photographic copy of said memorandum was put in evidence. He saw Geo. E. Zeitinger about once a month for several months preceding that time. Did not see C. J. Zeitinger more than once or twice in the course of several months. C. J. Zeitinger was building a mill at that time. Had several conversations with Geo. E. Zeitinger on the subject of settlement prior to the settlement. When the first proposition for the settlement was made in the shape of typewritten stipulation he submitted that to Geo. E. Zeitinger and Christian J. Zeitinger and the negotations went

on for several months according to his recollection. He never had any copy of the alterations that were made in the original stipulation, but only reported to the Zeitingers when he saw them what he heard, mainly from Randolph Laughlin, who was the one actively engaged in carrying out the negotiation. He kept a carbon copy of Exhibit 12, and would produce it at the next hearing if he could find it. His stenographer used the ordinary shorthand notebook. Do not know what became of her the city anymore. About a year ago her health got bad. Question by Mr. Kirby: "State how I came into possession of this paper, Exhibit 12? A. I had to file it with somebody in order to get a vote on the question of electing a trustee, and that paper was prepared solely for the purpose of being able to vote on that question. Now I was very anxious to get Mr. C. J. Zeitinger elected a trustee and I am sorry I did not get him. Whether I delivered it (Exhibit 12) to you or who I delivered it to now I don't remember, but it was prepared for the purpose to have a vote on the selection of trustees. A paper of that kind had to be filed. One of the stipulations of settlement called for a paper of that kind, and I prepared that under the terms of that stipulation so I could have a vote in the selection of Mr. C. J. Zeitinger as trustee for our side. There were to be two trustees, one for the other side and one for our side and he was my choice at all times."

Cross-examination by Mr. Schneider: Saw Miss Quisenberry last about a year ago. Don't know that she did work on this suit two months ago. I am satisfied you know her personally. When Exhibit 12 was written she had her office next door to mine. She was a public stenographer. Witness was in the court room this morning, and heard part of the testimony of Rowland L. Johnson, a witness for plaintiffs Zeitingers. He also was present when Mr. Wallace testified. He certainly did not call on Mr. Wallace and Mr. Wallace never called on him for the purpose of talking about any Hargadine-McKit-

trick matters. He called about another case that witness and Judge Barclay were in. When he went to Judge Barclay's office he had a casual talk with Mr. Wallace, in which Mr. Wallace asked him about the Hargadine-McKittrick matter, like maybe fifty other lawyers had done about something in the newspapers. Mr. Wallace never disclosed to him that he had any interest whatever in it and he listened with wonder this morning to what Mr. Wallace said. Mr. Schneider and C. J. Zeitinger called on him several times and asked about his written authority. He stated to them that the Zeitingers gave him the written authority and that he filed the paper and this (Exhibit 12) in the papers. He did not tell Mr. Schneider and C. J. Zeitinger that he had no written authority from Mr. C. J. Zeitinger and that he only had a letter from Mr. Ralph and had given that letter to Mr. Kirby; absolutely not. He said to Mr. Schneider that he had no authority from Mr. Ralph except what might be inferred from that letter. He certainly did not say to Mr. Schneider that he had no authority from C. J. Zeitinger, but quite to the contrary, that he had absolute authority. That C. J. Zeitinger was present in court every time that they met there and was fully aware of what was going on. Question by the court: ''Where was this paper which is marked defendant's Exhibit 12, signed? A. My recollection is that it was signed in my office. We kept a stenographer, Miss Douglas, but she is married and gone away. Don't know whether she is living in the city or not. Don't know her married name. Don't think anybody was present but C. J. and Geo. Zeitinger and myself when this document, Exhibit 12, was signed, because it was done in my private room.'' In answer to questions by Mr. Kirby, the witness identified one of his envelopes addressed in his handwriting and mailed by him. That it contained a carbon copy of Exhibit 12 and which was introduced in evidence by defendant's attorney, Mr. Kirby as Exhibit 13, and it was admitted by the plaintiffs' expert Grossheider to be a

carbon copy of defendants' Exhibit 12, except the signatures and date were blank.

Mr. Fauntleroy testified for respondent Dry Goods Company that he was an attorney and was acting for certain other interested parties in bringing about the settlement in the Supreme Court. Before the settlement was made he had several talks with both the Zeitingers and he and they discussed the thing in all its details for two or three weeks, and they were in his office the day before the case came up in the Supreme Court, and they took the position they wanted the proceeds of the settlement given to them and not to the lawyers, because they wanted it themselves. That he told them he could not deliver anything to them without the knowledge of their attorneys; that anything turned over would have to be to their attorneys, and they could deal with them. Witness said he was to get $25,000 in bonds for his fee if the settlement went through. January 29, 1919 (the day before any of the stipulations were dated and seven days before the consent decree in this court was rendered), he wrote a letter (Defendants Exhibit 1) to Randolph Laughlin, stating, in effect, that he would give $5,000 of his bonds for the benefit of Mr. Zeitinger if the settlement went through. Mr. Laughlin wrote on the letter that he disclaimed all interest in the bonds and that he was at liberty to deliver them to C. J. Zeitinger. This the witness did, by giving him an *interim* receipt therefor issued by the St. Louis Union Trust Company, for which he took a receipt signed by both of the Zeitingers on June 3, 1919. He told the Zeitingers he was giving them the bonds to put the settlement through. Before the settlement was made in the Supreme Court the Zeitingers were in constant close conference with him and were informed of everything in the matter that he knew—everything that was done and expected to be done—they were on the job all the time.

W. R. Gilbert, counsel for one of the parties to the settlement, testified for defendant Dry Goods Company, that either during or right after the settlement was

agreed to, one of the Zeitingers told him that the settlement was to be or had been made and that Zeitinger would be appointed trustee.

Plaintiffs testimony as to authority of their attorneys to sign the stipulations and settlement: Both the Zeitingers denied that they knew anything of the settlement or negotiations therefor until after it was made and the mandate issued. That no one ever talked to them about it before that time. That they learned of the settlement through the newspapers or from Julian Laughlin when they attended a hearing of the matter in the circuit court on February 7, 1919 (two days after the mandate was issued and filed in said circuit court) C. J. Zeitinger testified that on that date he read the mandate and two stipulations that were attached to it, which were signed by Julian Laughlin, Randolph Laughlin and Matt G. Reynolds, as attorneys for plaintiffs. He learned from these stipulations the terms of the settlement, and he was surprised that he was not to get anything out of it. Geo. E. Zeitinger testified that he also then read the stipulations carefully and got a definite understanding of what had taken place in the Supreme Court and he deliberated over it considerably. Their evidence tends to show that they then read all the stipulations except the one dated February 3, 1919. Both the Zeitingers testify they knew nothing of the agreement to give them any bonds by Fauntleroy until March 21, 1919, when they heard him say in court that he would give $5,000 of his $25,000 in bonds to the Zeitingers if the settlement went through; that they afterwards, in April, asked him for the bonds, which he gave them and they receipted for them as stated by Fauntleroy. C. J. Zeitinger got the bonds and kept them and denied his brother had any right therein. C. J. Zeitinger testified in effect that he did not know why Fauntleroy gave him the bonds—he just gave them to him without explanation.

As to signing defendant's Exhibit 12, the Zeitingers testified: Before said Exhibit 12 was presented to them

they both testified they had never ratified the settlement, either in writing or orally. When the signatures to said Exhibit were alone shown to them they admitted the signatures were theirs, but when the whole Exhibit was shown, C. J. Zeitinger said the only paper he signed was in respect to the trusteeship and he did not recall signing Exhibit 12. The only paper he signed ''was short—just a few lines in which he said. he would make me trustee.'' Zeitinger was requested to examine Exhibit 12 and said it bore no evidence of erasures or changes in the typewriting above the signatures. He then said, ''Well, I signed it, if I signed it, it is the only paper I signed, but it hasn't got on it anything with reference to the trustee.''

''Q. You don't deny having signed that paper? A. This looks like my writing, but I don't deny having signed. My best explanation would be as far as I know I did not at any time know the contents of this paper Number 12, when I signed it. As I recall it, there were only three or four lines of typewritten matter on that paper and it recited that the plaintiffs' attorneys would select one trustee and that he would appoint me. Laughlin said he would have to have that paper signed to do so and that I would have to ratify his allowances. That was in writing on that paper. The talk was that he would make me a trustee if I signed.''

The testimony of Geo. Zeitinger was to the same effect. He admitted that the signatures to Exhibit 12 were that of himself and his brother, but he did not recall the fore part of it and said Laughlin talked about his brother being trustee in connection with the paper he signed. But he would not say whether Exhibit 12 was written out that way when he signed it or not. But the only sentence in it which he recalls is the last sentence: ''We were present in Court Room No. 13 on Friday, February 7, 1919, when the matter of allowance of attorneys' fees in connection with the above cause was being heard by Judge Garesche.'' The only consideration for signing whatever he did sign was that his brother

should be trustee. He trusted Laughlin solely and signed anything he asked him to sign.''

The above testimony was given on May 7, 1921. On August 14th, two handwriting experts testified for plaintiffs that in their opinion the signatures of the Zeitingers to defendants Exhibit 12 were forgeries and were made with a rubber stamp and then some of the letters traced over with pen and ink. It would serve no useful purpose to attempt to set out their testimony. We have read it carefully and compared all the many admittedly-genuine signatures of the Zeitingers in the record, with their signatures on the photographic copy of Exhibit 12, and we can see nothing except the bare opinion of said experts to indicate that said signatures to Exhibit 12 are not the genuine signatures of said Christian J. and Geo. E. Zeitinger. We do not think the testimony of said experts adds anything to appellants' contention in this point.

The evidence further shows that Julian Laughlin did everything he could to have C. J. Zeitinger appointed trustee, but that Randolph Laughlin and Judge Reynolds, who represented other interveners, who were, under the stipulations, to be considered as plaintiffs, refused to consent to his appointment. When they ascertained that C. J. Zeitinger was not going to be appointed trustee they discharged Julian Laughlin, May 31, 1919, as their attorney and for the first time commenced active opposition to the settlement sometime in July, 1919.

Maynard S. Wallace, an attorney, associate partner of Judge Shephard Barclay, testified that the Zeitingers had come to see Judge Barclay concerning the litigation in the summer of 1919, but Judge Barclay went off on his vacation and left witness instructions to investigate the matter, particularly with reference to the Zeitingers having signed anything authorizing or ratifying anything that had been done. That the Zeitingers told him they had only signed one paper—that it was a paper of only a few lines in the center of it—''and that those lines were an assumption that they authorized or ratified some-

thing, but their statement was very indefinite." That he afterwards saw Julian Laughlin and describing the paper asked what it was and Laughlin said: "That that paper was not a ratification or anything, but only an authority to vote for him as trustee." That he wrote to Judge Barclay on August 28, two or three days after talking to Laughlin concerning the matter, and he refreshed his memory from that letter.

Rowland L. Johnson, representing Ralph's administrator, testified that he called on Julian Laughlin trying to locate the original stipulations on which the mandate of the Supreme Court was based; that he had been to Jefferson City and could find none of them there. This was sometime in the summer of 1919. Laughlin said nothing to him about defendant's Exhibit 12 or any paper authorizing or ratifying the settlement. That Laughlin told him since the parties had gotten other attorneys he did not care to have anything more to do with it.

C. F. Schneider, plaintiffs' attorney, testified that he and C. J. Zeitinger called on Julian Laughlin and asked him whether he had any authority from the Zeitingers to make the settlement. He said at first that he had spoken to the Zeitingers and then said he had not seen C. J. Zeitinger, that he was at his mill, but talked to George Zeitinger. Laughlin further said he had no written authority to make the settlement. But he did not ask Laughlin whether he had any paper ratifying the settlement; this had not occurred to him.

The evidence shows that Gus Ralph, one of the original plaintiffs, died before the case was submitted to the Supreme Court. That his death was never suggested, but that by leave of court, on March 17, 1921, his heirs and administrator entered their appearance and filed their return herein. But no affidavit for appeal was ever made by them.

On December 30, 1920, intervening stockholders, Thomas F. Moylan et al., filed a motion or petition of intervention in said cause, setting up the matters in sub-

stance the same as in the original petition for receiver, and also stating that the trustees to whom the property of the Dry Goods Company had been turned over pursuant to the orders of said circuit court under the mandate of this court and stipulations were wasting the property, and that said stipulations were not authorized to be signed by the stockholders parties then before the court, and they were fraudulently procured and interveners were not bound thereby, and asking the court to appoint a receiver "as prayed for in the original petition to take charge of the assets of said corporation." On March 20, 1922, said motion or petition of interveners Moylan et al. was, on motion of. defendant Dry Goods Company, stricken from the files.

On July 11, 1921, the plaintiffs Zeitinger filed a motion, in substance the same as that of interveners Moylan et al. which was likewise stricken from the files the same day.

There was also an appeal from the action of the circuit court in thus striking said motions and petitions.

II.   As to the jurisdiction of Division Two of this court to reverse and remand the case with directions to the lower court to dismiss the cause and **Appointment of Receiver: Appeal from Interlocutory Order.** restore the Dry Goods Company to its property on certain terms and conditions, as per stipulations of the parties.

It is contended that on appeal from the refusal of the circuit court to set aside its interlocutory order appointing a receiver, the merits of the case cannot be determined, but only the question of the receivership.

In support of that proposition Tuttle v. Blow, 163 Mo. 635, is cited. In that case there was an application for the appointment of a receiver in a suit to foreclose a mortgage on certain real estate. A receiver having been appointed before the hearing on the right to foreclose was had, the defendants moved to set aside the order appointing the receiver. Their motion was overruled and they appealed to this court, which denied them relief

because they had filed no exceptions to the order of the court overruling their motion to set aside the receivership. Appellants argued the case in this court the same as if it was before the court on demurrer to the petition, which we held could not be done. That the sufficiency of the bill so far as the relief asked for in the final decree would not be considered, nor any other question except such as was legitimately connected with the granting of the order appointing the receiver. That case is to be distinguished from this in that the final, as well as preliminary relief sought in this case was the appointment of a receiver to take charge of the assets of the Hargadine-McKittrick Dry Goods Co., and dispose of its assets under the orders of the court. Whereas the appointment of the receiver in the Blow case was only incident to the main relief sought, to-wit, to foreclosure of plaintiffs' mortgage. In the case at bar the right to appoint the receiver and take the Dry Goods Company's property from the management of its lawful officers was the gravamen, the gist of the whole proceeding, and this court on appeal had the power to determine whether on the record before it there was any lawful right for the circuit court to appoint a receiver, and if not, to reverse and remand the case with directions to discharge the receiver and restore the Dry Goods Company to its property. Otherwise, of what avail is the right to appeal in such cases? Can the lower court still proceed and appoint a receiver notwithstanding this court had decreed that it had no right to do so and issued its mandate to the lower court to revoke its order appointing a receiver? We apprehend not. Inasmuch as the gravamen of the case was the right to appoint a receiver, it would necessarily follow that if there was no right to appoint a receiver the whole action failed and should be dismissed on such terms and conditions as the court might fix in its decree, especially if agreed to by all the parties to the litigation.

The statute, Section 1469, Revised Statutes 1919, provides: "The Supreme Court shall summarily hear and determine all appeals from orders refusing to re-

Zeitinger v. Hargadine-McKittrick Dry Goods Co.

voke, modify or change an interlocutory order appointing a receiver or receivers, and for that purpose shall, on motion, advance the case on the docket.''

While it is true on such appeal the only matter be-fore the court would be the right of plaintiffs on the record to have a receiver appointed, still the right to have a receiver appointed would be before the court, and the statute expressly requires the court to ''hear and *determine*'' it. If the only purpose and relief sought in the case is the appointment of a receiver, as in this case (Kaufman v. Annuity Realty Co., 256 S. W. 1. c. 796), then this court by the express terms of the statute hears and determines the whole case on appeal from the' interlocutory order appointing a receiver. But if the matter of receivership is only an incident to the main relief sought as in Tuttle v. Blow, supra, of course this court could not on appeal from such interlocutory order decide the main branch of the case, which would not be before it.

Several proceedings in this case since our mandate was issued have been before this court, in none of which was there any question raised as to our jurisdiction to enter said consent decree and issue said mandate. In all of them it was assumed our mandate was binding so far as our jurisdiction was concerned. [Zeitinger v. Hargadine-McKittrick Co., Houts appeal, 250 S. W. (Mo.) 913; State ex rel. Dry Goods Co. v. Garesche, 227 S. W. (Mo.) 824; Kaufman v. Annuity Realty Co., 256 S. W. (Mo.) 792.]

We rule this point against appellants.

III.    We must also hold that inasmuch as this suit was a class suit brought by the Zeitingers and Gus Ralph as stockholders for themselves and all other stockholders in said Dry Goods Company, the Zeitingers represented all the stockholders, including the heirs of Gus Ralph, after his death, which occurred prior to the case being appealed to the Supreme Court.

Class Suit: Authority to Bind Others.

Therefore any action of the court which bound the Zeit-
ingers bound such heirs, whether they were actual par-
ties to the suit or not.  [Kaufman v. Annuity Realty Co.,
Zeitinger v. Hargadine Co., supra, and Lilly v. Tobbein,
103 Mo. 489.]

IV.  The only jurisdiction of the circuit court in said
cause, after our mandate was returned to it, was to
carry out the mandate of this court.  This is
elementary law.  [Rees v. McDaniel, 131 Mo.
681-2; Powell v. Bowen, 240 S. W. 1085-7;
Stump v. Hornback, 109 Mo. 277.]  Therefore the decree
of this court, either for want of authority of the attor-
neys in said cause to make the stipulations on which it
was based, or for fraudulently representing to this court
that they had such authority, could not be urged in the
circuit court against any action of that court in carry-
ing out the decree and mandate of this court.

**Mandate: Compliance.**

V.  But under the evidence in this case we must
find, as was found by the learned lower court, that the
Zeitingers and all the other stockholders then actual
parties to the suit consented verbally (and a number in
writing) to the stipulations and consent decree of this
court before it was made, and afterwards
the Zeitingers, in writing, ratified the ac-
tion of their attorney, Julian Laughlin, in
signing all such stipulations.  So that there was neither
fraud nor want of authority in the attorneys to make the
stipulations authorizing this court to enter such consent
decree.  The Zeitingers received $5,000 in bonds for con-
senting to the settlement.  They both expected C. J. Zeit-
inger to be one of the trustees, which could not be ac-
complished unless the settlement was consented to by
them.  They both say to make C. J. Zeitinger trustee
was the reason they signed the paper presented to them
by Mr. Laughlin.  They also say they consented to Laugh-
lin having an attorneys' fee of $25,000, as attorney for
the plaintiffs, allowed under the settlement, payable out
of the property of defendant Dry Goods Company. . We

**Authority of Attorney.**

shall not repeat the evidence. We have fully set out the salient features of it, bearing on his point, in our statement of the facts, and we hold there can be but one conclusion therefrom, to-wit: That the Zeitingers were fully advised of the settlement before it was made and consented thereto and afterwards signed defendants Exhibit 12, shown in the record, fully ratifying and confirming the act of their attorney Julian Laughlin in signing such stipulations and making such settlement.

VI. So that even if the decree and mandate of this court reversing and remanding said cause, were not binding for want of jurisdiction, the result would be the same because we find as a matter of fact that all said stipulations were authorized or confirmed by the then parties to the suit, including the Zeitingers, and were beyond recall by any such parties or any other stockholders of said Company. If the Supreme Court was without jurisdiction to act upon said stipulations and enter judgment as therein provided, it admittedly had jurisdiction to reverse and remand said cause and set aside the receivership. If so, the circuit court had jurisdiction to enter judgment according to said stipulations, all of which were before said court, whether so directed by the Supreme Court or not.

*Lack of Jurisdiction: Waiver.*

VII. The stipulations did not state that the plaintiffs should appoint one of the trustees, but that the attorneys for the plaintiffs should do so. This did not require them to appoint one of the plaintiffs trustee, but such suitable person as they might see fit to appoint. Julian Laughlin could not himself appoint C. J. Zeitinger trustee and when Randolph Laughlin and Judge Matt G. Reynolds, attorneys for other plaintiffs and interveners, who under the stipulations, were to be regarded as plaintiffs, would not agree to appoint said Zeitinger trustee, although urged to do so by Julian Laughlin, as we find the fact to be, he did all that he

*Appointment of Trustee: Disappointment.*

agreed to do relative to the appointment of said Zeitinger as such trustee. The failure of said Zeitinger to secure said appointment in no way affected the validity of said Exhibit 12 as a ratification of said settlement.

VIII. Said stipulations for settlement not being fraudulent and having been duly authorized and confirmed by the Zeitingers and all other stockholders then actual parties to the suit, not only they, but all stockholders not parties to the suit, were likewise bound by said stipulations and could not afterwards repudiate or recall said settlement or the action of the circuit court in entering judgment in accordance therewith. Consequently, both the motion of stockholders Moylan et al., filed December 30, 1920, to intervene herein, and the motion of the Zeitingers made July 11, 1921, to set aside the settlement and appoint another receiver were properly denied or stricken from the files. [Zeitinger v. Hargadine Co., Hout's Appeal, 250 S. W. (Mo.) 913; Kaufman v. Annuity Co., 256 S. W. (Mo.) 792.]

*Class Suit: Settlement.*

In the Kaufman case the court, Division Two, held that Interveners Moylan et al., who had brought an independent suit as stockholders to enforce a lien against the property of the Railway Exchange Building Company for moneys of the Dry Goods Company invested in said Railway Exchange Building Company, were represented by the Zeitingers in the original proceeding and consequently were as fully bound by our mandate and the stipulations and all other proceedings in the case, as were the Zeitingers, and could not maintain their said independent suit. It is true the court said they might intervene in said original suits, but it carefully limited their right to complain of said mandate and stipulations and prior proceedings to that of the Zeitingers. Having found the Zeitingers had no right to complain thereof, as we do, it follows from the decision in the Kaufman case, that Interveners Moylan et al. have no such right and their motion to intervene was properly denied.

In the Hout's Appeal, 250 S. W. 913, supra, we held that intervention after the final judgment in said original proceeding under our mandate and said stipulations would only be allowed in furtherance of justice and the intervention there attempted was not permitted. In that case, which was decided by Court in Banc, as here, the intervention was filed after our decree of reversal was made and our mandate filed and all the stipulations for settlement entered into and it was held too late for such intervention. This is true of the intervention of Moylan and others in this case. Justice does not require that they be allowed to intervene and litigate all the matters over again that were previously settled and decided in this case while they were represented by the Zeitingers.

The result is, the judgment appealed from is affirmed. *Lindsay, C.,* concurs.

PER CURIAM:—The opinion written by our former Commissioner, SMALL, is adopted by Court in Banc. All concur, except *Graves, C. J.,* and *White, J.,* who dissent. *Blair, J.,* concurs in paragraphs 5, 6, 7 and 8 and the result; *Ragland, J.,* concurs in the result only.