Motion to dismiss appeal denied December 17, 1929; petition for rehearing denied January 7; argued on the merits October 10, 1930; reversed January 27; rehearing denied March 31, 1931

## STATE EX REL. BROOKFIELD CO. *v.* MART
### (283 P. 23, 295 P. 459)

*Edw. C. Judd*, of Astoria, for appellant.
*Norblad & Hesse*, of Astoria, for respondent.

ROSSMAN, J. August 2, 1929, the Brookfield Company, which is the relator in this proceeding, instituted a suit in the circuit court of Clatsop county against this defendant, alleging that the latter had received for the plaintiff's use $1,330.57 in cash, and municipal warrants in the amount of $13,500; following other averments, which the plaintiff evidently intended should confer jurisdiction upon a court of equity, the complaint prayed for "a judgment and decree against the defendant * * *. Third: For a mandatory injunction ordering and directing defendant to forthwith deposit with the clerk" the above sum of money and the aforementioned city warrants. Apparently, upon the filing of the complaint an order was made and served upon the defendant which directed him to make such deposit;

he declined to do so. Thereupon, the Brookfield Company, as relator, instituted this proceeding for the purpose of having the defendant cited for a contempt of court; this proceeding was begun by the filing of a motion for a warrant of arrest, based upon the affidavit of Charles A. Larson, president of the Brookfield Company. Upon the arrest and appearance of the defendant he interposed a demurrer; when it was overruled he declined to plead further, and the court imposed a penalty upon finding him guilty of a contempt. He thereupon prosecuted his appeal to this court.

The present controversy arises out of the following contentions advanced by the state: (1) That the appellant had not filed with the clerk of this court a transcript of the record of the circuit court within 30 days of the time that the appeal was perfected; (2) that a stipulation for an extension of time, which the appellant relies upon as a foundation for an order of the circuit court granting an extension of time to file his transcript in this court bears the title of the preceding suits, but not of this proceeding, and that it should, therefore, be stricken from the transcript; (3) that the stipulation just mentioned is ineffective because it does not bear the signature of the district attorney.

■ The various pleadings on behalf of the state and practically all of the orders signed by the circuit court judge, which constitute the record in this proceeding, are written upon stationery which bears the imprint of Norblad & Hesse, who are the attorneys for the relator; in fact, even the warrant of arrest is written upon the same stationery. Whenever the signature of the district attorney appears upon any pleading it is followed immediately by "Norblad & Hesse, Attorneys for Plaintiff." It is now contended that when the appellant obtained the signature of Norblad & Hesse

to a stipulation, which provided "that the defendant shall have an extension of 30 days in which to file his transcript on appeal," but failed to secure the signature of the district attorney, the omission rendered the stipulation ineffective and that it should be stricken from the transcript together with the order of the circuit court based upon it. The preceding order of the court in the civil cause, which it is claimed the defendant ignored, was made solely for the benefit of the plaintiff in that suit. The question arises, however, whether the nature of that order and the defendant's act in refusing to obey it identified this proceeding, which then ensued, as so far criminal that when the defendant failed to obtain the signature of the district attorney to the aforementioned stipulation his appeal should be dismissed upon the motion of that official. In a criminal contempt, which involves no element of personal injury, a private prosecutor apparently would have no greater right to stipulate on behalf of the state than in any other criminal proceeding. When in the progress of a suit a party is ordered to do something for the benefit of his opponent, and disobeys that order, he is guilty of a contempt, but here the personal injury to the party in whose favor the court made the order gives a remedial character to the contempt, and the punishment imposed is generally intended only to secure to the adverse party the right which the court awarded to him. *Bessette v. Conkey Co.*, 194 U. S. 324 (24 S. Ct. 665, 48 L. Ed. 997). As was said *In Re Nevitt*, 117 Fed. 448 (54 C. C. A. 622), "the commitment is in the nature of an execution to enforce the judgment of the court, and the party in whose favor that judgment was rendered is the real party in interest in the proceedings." We believe that the present proceeding is purely civil in character and that our

statutes, which delineate the practice to be followed, recognize the aforementioned distinctions. Section 675, Or. L., provides:

In the proceeding for a contempt, the state is the plaintiff. In all cases of public interest, the proceeding may be prosecuted by the district attorney, on behalf of the state, and in all cases where the proceeding is commenced upon the relation of a private party, such party shall be deemed a co-plaintiff with the state.

Section 672, Or. L., prescribes the procedure in cases of direct contempt. Section 673, as amended by 1923 Session Laws, chap. 165, provides thus:

In cases other than those mentioned in section 672, before any proceedings can be taken therein, the facts constituting the contempt must be shown by an affidavit presented to the court or judicial officer, and thereupon such court or officer may either make an order upon the person charged to show cause why he should not be arrested to answer, or issue a warrant of arrest to bring such person to answer in the first instance. The affidavit shall be sufficient if it set forth the facts constituting the contempt, and need not contain recitals of matters already appearing in the record of any action, suit or proceeding in which the person charged with contempt has been personally served with process. It shall be sufficient if the name of the state of Oregon be added as a party plaintiff in the affidavit and proceedings following it, without any action of the district attorney, and without any proceedings for adding such party.

Thus when a proceeding, like the present one, "is commenced upon the relation of a private party, such party shall be deemed a co-plaintiff with the state," and it is sufficient "if the name of the state of Oregon be added as a party plaintiff * * * without any action of the district attorney, and without any proceedings for adding such party." The meaning of the

prefix "co" as stated by Black's Law Dictionary (2d Ed.) is: "A prefix to words, meaning 'with' or 'in conjunction' or 'joint'; e. g., co-trustees, co-executors." Such being the situation an act done by either party plaintiff in regard to the appeal is the act of both, because they have a joint and entire control over the litigation; in fact, the two are one collective party. We conclude that when Norblad & Hesse signed the stipulation as "attorneys for plaintiff" the state was also bound. We have not overlooked our decision in *Baskin v. Marion County,* 70 Or. 363 (141 P. 1014); there, although the county was the only defendant, a private attorney undertook to prosecute an appeal to this court in the name of the county. We believe that the facts readily differentiate the two cases.

■ Next it is contended by the state and by the relator that when Norblad & Hesse signed the stipulation it bore the title of only the civil suit, and that, therefore, it is ineffective in this proceeding. Affidavits in support of this contention submit that after the instrument was signed its caption was altered and are accompanied by motions to strike it and the order of the circuit court based upon it from the transcript. The defendant has filed several affidavits controverting these contentions. These concede that when the instrument was prepared by Mr. Judd, attorney for the defendant, the name of the plaintiff appeared as Brookfield Company, but aver that before it was submitted to counsel for the prosecution an associate of Mr. Judd discovered the error; these affiants state that thereupon a stenographer was directed to insert "State of Oregon ex rel." above Brookfield Company and that this addition was made in at least two of the four documents. This explanation we accept as true,

and we are also prepared to believe that Mr. Judd unintentionally submitted to Norblad & Hesse the two forms, which inadvertently had not been corrected. But we deem all of this of slight importance for the reasons which follow: (1) When the stipulation was presented for sigature no disposition had been made of the civil suit; hence, no one could have believed that the defendant desired an extension of time in it to file a transcript; (2) the presentation of the document for signature was preceded by an oral agreement that the defendant should have an extension of time in this cause; it is true that Mr. Hesse avers that the words spoken were so general that he was not informed of the purpose for which the time was requested, but it seems clear that both understood that the extension was wanted in this proceeding; (3) no one was misled by this error as appears from Mr. Hesse's affidavit; he states that he at once observed the error and remarked to an associate, ''Well, look at the darned fool! He got his stipulation in the wrong case''; (4) it is the practice in many jurisdictions to entitle the contempt proceeding with the name of the cause out of which it arose; (5) the only object of requiring a title upon a pleading is to identify it with the action and the court; in this cause it is clear that the erroneous title called the attention of all to the right cause. We conclude that the defendant's contention is without merit. It is to be regretted that Mr. Judd changed the title after Mr. Hesse signed the stipulation. Possibly he believed that the copy left with the latter was properly entitled, but nevertheless a due respect for the proprieties of the situation should have suggested a different course. But, we can not dismiss the appeal on account of this unfortunate act alone.

■ We come now to the remaining contention that the pleadings in the civil suit should be stricken from the transcript. Since this proceeding was disposed of upon the defendant's announcement that he would plead no further after the court had overruled his demurrer to the affidavit, which instituted this proceeding, the pleadings in the equity suit never became a part of this proceeding unless the latter is so connected with and dependent upon the original suit that it is a part of it. Many authorities regard the contempt action as no more a part of the original suit than an indictment for perjury is a part of the original action out of which it arose. There are, however, decisions which take the opposite view. The authorities are collected in 13 C. J., Contempt, § 80, p. 56. In *State ex rel. v. Sieber,* 49 Or. 1 (88 P. 313), Mr. Justice MOORE cites some of the authorities which regard the contempt action as a part of the original suit; but left the inference that in this jurisdiction the two causes are separate. The decision in that case held that the pleadings in the original suit or action are no part of the pleading in the contempt proceeding. But, as we have seen, the 1923 session of our legislature has provided:

The affidavit shall be sufficient if it set forth the facts constituting the contempt, and need not contain recitals of matters already appearing in the record of any action, suit or proceeding in which the person charged with contempt has been personally served with process.

The authorities reviewed by Mr. Justice MOORE in *State ex rel. v. Sieber* hold that the records in the original suit need not be proved in the contempt action when the latter is a part of the former because the

courts take judicial notice of their own records. (See also *Ferguson v. Wheeler,* 126 Iowa 111 (101 N. W. 638); *Haaren v. Mould,* 144 Iowa 296 (122 N. W. 921, 24 L. R. A. (N. S.) 404); *State v. Heiser,* 20 N. D. 357 (127 N. W. 72.) While the 1923 act is vague we believe that the legislative purpose is evident. It apparently recognized the contempt proceeding as dependent upon the original suit although prosecuted in the name of the state; such being the legislature's contention of the two proceedings it provided that matters of record in the first suit need not be averred in the contempt action, and by inference directs the court to take judicial notice of them. If our understanding of these indirect contempts, which we have previously stated, is sound, this legislative rule is intended to facilitate the trial of actions by eliminating unnecessary pleadings. Since the contempt proceeding was dependent upon the original suit, the defendant properly included the pleadings in the latter suit in the transcript.

The motion will be denied.

## ON THE MERITS

*G. C. Fulton*, of Astoria (Edw. C. Judd and G. C. & A. C. Fulton, all of Astoria, on the brief) for appellant.

*Frank C. Hesse*, of Astoria (F. P. Leinenweber, District Attorney, and Norblad & Hesse, all of Astoria, on the brief) for respondent.

RAND, J. This is an appeal by defendant from a judgment holding him in contempt. The facts are briefly these: The relator, alleging ownership in itself of certain city warrants that had been issued to defendant on certain construction contracts and of a certain sum of money claimed to have been paid defendant on said work, commenced suit in the circuit court for Clatsop county to recover the same from defendant. Upon the filing of the complaint, an ex parte restraining order was issued by the Honorable H. K. Zimmerman, the circuit judge of said court. Under its terms the defendant was enjoined from transferring the warrants. It also contained a mandatory provision requiring defendant to immediately deliver said warrants and money to the clerk of the court. The complaint, summons and restraining order were duly served on defendant. Immediately after such service defendant seasonably filed an affidavit of prejudice against said circuit judge under Oregon Code 1930, § 1-405, et seq., but failed to comply with said restraining order and thereupon the relator caused an affidavit to be filed, seeking to have the defendant punished for contempt for failing to comply with the restraining order. Based upon said affidavit, Judge Zimmerman issued a warrant for the arrest of defendant. Defendant was brought before the court and, without filing any additional affidavit of prejudice, he filed a demurrer to the sufficiency of the affidavit and contended that, because of the affidavit of prejudice filed in the equity suit,

Judge Zimmerman was disqualified from hearing the contempt proceedings. His objections were overruled as was likewise the demurrer and, without the offering of any evidence to establish the truth of the charges made in the affidavit in the contempt proceedings, defendant was found guilty of contempt and was sentenced to imprisonment in the county jail until the warrants and money were deposited with the county clerk. He was also fined the sum of $100 and sentenced to imprisonment in the county jail one day for each $2 of said fine until paid. From this judgment he has appealed.

The preliminary injuction order for the violation of which defendant was held to be in contempt was one which had been granted pursuant to the prayer of the complaint in the equity suit. The office of a preliminary injunction is to preserve the status quo so that, upon the final hearing, full relief may be granted. Mandatory injunctions are but rarely issued and should be issued only in extreme cases and where the right to such relief is clear. Here it was granted upon the wholly unsupported allegations of the complaint and without a hearing. It required the defendant to deposit with the clerk of the court certain warrants and certain moneys, which the complaint alleged had been issued and paid to defendant, without any showing that he had the same or any part thereof in his possession or under his control. Under such circumstances defendant had a clear right, if the facts were such as to justify him in so doing, to apply to a circuit judge not disqualified for the modification or discharge of the injunction order. This relief could be granted only upon an application made in the equity suit and by a judge sitting in that suit who was not at the time disqualified.

■■ The sole object of instituting the contempt proceedings, and the only purpose such proceedings could accomplish, was to enable plaintiff to obtain the remedy sought in the equity suit. The contempt, therefore, was a civil, and not a criminal, contempt. Under such circumstances, we are unanimously of the opinion that, after the filing of the affidavit of prejudice, Judge Zimmerman was as much disqualified to order the arrest of the defendant or to sit and try the contempt proceedings as he was to proceed in the trial of the equity suit.

The judgment appealed from will, therefore, be reversed.

BELT and KELLY, JJ., concur.