[L. A. No. 15336. In Bank.—April 27, 1936.]

In the Matter of the Estate of LOUISE M. KENT, Deceased. CALIFORNIA TRUST COMPANY, as Administrator, etc., Appellant, v. ALICE CASSIDY, as Executrix, etc., et al., Respondents.

Chas. E. R. Fulcher for Appellant.

Russell D. Hardy, as *Amicus Curiae* on Behalf of Appellant.

Joe Crider, Jr., and A. F. Mack, Jr., for Respondents.

Ralph G. Lindström and Betty Marshall Graydon, *Amici Curiae.*

WASTE, C. J.—This cause came to the Supreme Court on a petition for hearing after decision and judgment in the District Court of Appeal, Second Appellate District, Division Two.

The first pertinent contention made by the petitioner (appellant in the District Court of Appeal) is that the decision rendered by that court is void and of no effect for the reason that the court rendering the decision was not a duly constituted court of appeal. The court, during the consideration of the cause, was composed of the presiding justice and two justices *pro tempore,* the latter sitting by regular assignment made by the chairman of the Judicial Council. The question whether or not the court, thus composed, was a duly and regularly constituted court of appeal has passed out of the picture, and requires no consideration. ██ "The Supreme Court [has] power . . . to order any cause pending before a District Court of Appeal to be heard and determined by the Supreme Court." (Const., art. VI, sec. 4c.) When such an order of transfer is made, the opinion and decision of the District Court of Appeal is no more effective as a judgment than if it had not been rendered. It serves no further purpose than that it may be regarded as a brief on the questions therein discussed, and, if found satisfactory when taken over by this court on petition for hearing it may be, and many times is, adopted as the opinion of the Supreme Court. For these reasons, the present appeal, having for good cause been transferred here, there remain for consideration the additional grounds on which the cause was thus transferred, to wit, that the decision purports to overrule a decision of another division of the same District Court of Appeal (*Toby* v. *Superior Court,* 8 Cal. App. (2d) 32 [47 Pac. (2d) 338], resulting in a lack of uniformity of decision; and that the question involved was decided upon a point raised and argued only by *amicus curiae,* without participation by the parties to the appeal.

As we come to the consideration of the merits of the question as to whether Judge *pro tempore* Bischoff was entitled to sit in the probate court, we find the facts to be well collated and stated in the opinion prepared by Mr. Presiding Justice

Crail of the District Court of Appeal. For this reason, we adopt portions of that opinion as the opinion of this court, viz.:

"Louise M. Kent, deceased, left an estate consisting of securities appraised at $14,239.38. By her will she bequeathed a total of $8,500 in cash to a number of legatees named therein. The residue was not disposed of by the instrument and went by operation of law to her heirs. Alice Cassidy was appointed executrix on April 20, 1931. On May 14, 1934, she was removed by order of court; and the trust company, objector, was appointed administrator with the will annexed. After her removal Alice Cassidy filed her final account, to which objector (appellant) filed its contest, asserting several grounds for surcharging the account of the removed executrix. When the final account of the removed executrix came on for hearing after due notice to the world, all persons who had appeared in the proceeding stipulated in writing that the cause might be heard by Florence M. Bischoff as judge *pro tempore*. Miss Bischoff is a member of the bar and one of the three commissioners regularly presiding in the probate department of the superior court of Los Angeles county. She hears the uncontested or routine calendars as commissioner under section 259a of the Code of Civil Procedure. She hears contested matters when and only when all parties who have appeared in the proceeding consent in writing to her appointment as judge *pro tempore*. Her selection in the instant case was approved and ordered by the court in which the cause was pending. The court, Judge Bischoff presiding, after hearing the case found against the removed executrix on all contested items except on one item for damages for alleged negligence for failing to sell listed stock of the estate within a reasonable time and found in favor of the removed executrix on this charge of negligence. It is from this latter part of the order that the appeal is taken.

"One of the contentions raised on this appeal is a jurisdictional one and for that reason should be considered first. The contention is made that the order is void because Miss Bischoff was not duly authorized by stipulation of the parties to act as judge *pro tempore*. To state the contention in greater detail, it is said that she derived her power to act purely from a stipulation entered into between the attorneys for those who appeared in the estate and no others, and that

the heirs at law, the devisees under the will and the creditors of the estate, all of whom were parties in interest but had not appeared, did not stipulate in writing or otherwise or at all that Florence M. Bischoff should act as judge *pro tempore*.

"The court's jurisdiction to make the order which is appealed from, or its lack of jurisdiction, must be tested by the provisions of section 5, article VI, of the Constitution as amended in 1928, which reads as follows: 'Upon stipulation of the *parties litigant* or their attorneys of record a cause in the superior court . . . may be tried by a judge *pro tempore* who must be a member of the bar sworn to try the cause, and who shall be empowered to act in such capacity in the cause tried before him until the final determination thereof. The selection of such judge *pro tempore* shall be subject to the approval and order of the court in which said cause is pending and shall also be subject to such regulations and orders as may be prescribed by the judicial council.'

"The question is one of great importance to the administration of justice in California. The amendment to the Constitution above quoted is a part of the program presented by the judicial council with the aim in view of giving to the judicial machinery of the state greater elasticity and efficiency. As a part of the same program the legislature, at its first session after the constitutional amendment of 1928 was adopted, enacted section 259a of the Code of Civil Procedure, which reads in part as follows: 'Subject to the supervision of the court, every court commissioner of a county or city and county having a population of nine hundred thousand inhabitants or more shall . . . have power: . . . 4. To act as judge *pro tempore* when otherwise qualified so to act, and when appointed for that purpose; provided, that while acting as such he shall receive no compensation therefor other than his compensation as commissioner; . . . 6. (Uncontested actions.) When ordered by the court appointing him so to do, to hear, report on and determine all uncontested actions and proceedings other than actions for divorce, maintenance or annulment of marriage.'

" . . . This program [of the judicial council] must be interpreted broadly and applied liberally if it is to succeed,— with the proper safeguards certainly, but along the lines conducive to efficiency and vigor. Proper safeguards, so far as judges *pro tempore* are concerned, were provided for in the

amendment itself, which says: 'The selection of such judge *pro tempore* shall be subject to the approval and order of the court in which said cause is pending and shall also be subject to *such regulations and orders as may be prescribed by the judicial council.*'

"The largest single use of judges *pro tempore* in Los Angeles county is in the probate department, where the three commissioners are accustomed to act as such,—often in several proceedings each day. These commissioners, for days which have lengthened into months and now into years, have presided in the probate department as judges *pro tempore*. Their expertness in probate law and procedure is so well recognized, their judicial work so efficient, and the practice so satisfactory to all concerned that these commissioners might well deserve the title of assistant judges. To a remarkable degree the result has been in consonance with the aims of the program for the expedition of judicial business. . . . (See Fifth Report of the Judicial Council, 1934, p. 5.)

"It will be remembered that in probate proceedings the heirs, legatees and creditors may be scattered to the four corners of the earth. Frequently their residences are unknown. Who the heirs and legatees actually are is not ordinarily determined in a probate proceeding until the final order of distribution. Rarely, although occasionally, the determination is made in advance of that order on a petition to determine heirship. If it is necessary for nonappearing heirs and devisees and creditors to join in such stipulations, then it is an impossibility. No such stipulations may be obtained. Furthermore, if such nonappearing heirs and devisees and creditors are parties to the proceeding and must join in stipulations before they are effective, then no stipulation in any probate proceeding may be entered into, not even with regard to the introduction of evidence or the conduct of the trial.

"A decision that the order appealed from is void because of the failure to get such a stipulation from the nonappearing heirs and legatees and creditors will not only terminate this practice of appointing judges *pro tempore* but will make void hundreds, possibly thousands, of orders which have been signed by such judges *pro tempore,* and unsettle the titles to vast amounts of real property in Los Angeles county. A decision sustaining the order will not only save the practice

and save the titles to property, but will make it possible for the superior courts to expand their man power in case of temporary congestion and to decrease their man power when the emergency passes. The decision of the question is therefore an important one.

"Who are parties in a probate proceeding? More than thirty years ago in the *Estate of McDougald,* 143 Cal. 476 [77 Pac. 443], the Supreme Court of this state declared the law on the question, *who are parties in a probate proceeding,* in a well-reasoned opinion in which that question was the only question before the court, and the law so declared has been accepted and followed by the superior court of Los Angeles county and other counties from that day to this. That law has become a rule of property, followed alike by the title companies and all others interested in the vast amount of property which passes through the probate department of that court each year. In the McDougald case, *supra,* the trial court had made an order settling a final account. From this order an appeal was taken, but no notice of appeal was served on the creditors who had not appeared, and the respondent moved to dismiss the appeal for the failure to serve such persons, on the theory that all of said persons were directly *interested* in the result and hence were *parties* to the proceeding. We quote rather fully from the opinion:

" 'If these contentions prevail, it is obvious that difficulties will arise in many cases. If a non-appearing creditor is an adverse party, so also would be a non-appearing heir or legatee. . . . The word "party" should not be given so broad a meaning. *That a person interested in an estate, although his name and his interest is disclosed on the face of the record, is not necessarily a party to the cause or proceeding is manifest from a consideration of the different cases where persons interested may or may not appear, at their option.* In a proceeding to probate a will, any person interested, whether as devisee, legatee, or heir, may appear and contest the probate. The petition for probate must show the names of the heirs and devisees, and hence their interest must always appear in the record. *Yet, it would not be contended that an heir, devisee, or legatee who fails to appear at the time of the hearing of the petition is in any sense a party to such proceeding.* So with the petition for administration, there may be many persons who are entitled to letters and

who are interested in the matter of the appointment. But if they fail to appear or contest the right of the petitioner, *it is manifest that they cannot be considered parties.* Upon the settlement of an account, every creditor, heir, legatee, or devisee is a person interested, and as such has a right to enter an appearance and become a party. The names of these persons generally appear upon the face of the account, or upon some of the documents referred to therein, but the giving of the notice and the statement of their rights or claims does not, *ipso facto,* make them parties to the proceeding. The only effect of such a notice, so far as this question is concerned, is to give them an opportunity to become parties, so that, if they desire they may appear and make themselves parties in some appropriate manner. Unless they do so appear they are to be considered as having no objections to the account as rendered, and as consenting [stipulating] that it may be settled accordingly. If thereupon other interested persons do appear, and by virtue of a contest secure a decision which inures to the benefit of those persons who do not appear, this does not make the non-appearing persons parties to the contest, notwithstanding their failure to appear, so that it becomes necessary to serve upon them notice of an appeal from the order made upon the contest.' The court's position is supported by citations therein from numerous decisions, including *In re Ryer's Estate,* 110 Cal. 556, 558 [42 Pac. 1082] ; *In re Calkins' Estate,* 112 Cal. 296, 297 [44 Pac. 577] ; *In re Bullard's Estate,* 114 Cal. 462 [46 Pac. 297], and other cases. See, also, *In re Carpenter's Estate,* 146 Cal. 661 [80 Pac. 1072]. This also is the rule throughout the nation. In all but a few of the probate cases when the question is raised it is held that the several persons having an interest in the subject-matter of the action, who do not appear, are not parties. See cases collected in 88 A. L. R. 442.

''This law was stated again in almost the same language in *McKenzie* v. *Hill,* 9 Cal. App. 78 [98 Pac. 55], as follows: 'In a petition to probate a will any person interested, whether as devisee, legatee, or heir, may appear and contest the probate. The petition for probate must show the names of the heirs and devisees, and hence their interest must always appear in the record. Yet it would not be contended that an heir, devisee, or legatee who fails to appear, at the time of the hearing of the petition is in any sense a party to the

proceeding. . . . Upon the settlement of an account, every creditor, heir, legatee, or devisee is a person interested, and, as such, has a right to enter an appearance and become a party. The names of these persons generally appear upon the face of the account or upon some of the documents referred to therein, but the giving of the notice and the statement of their rights or claims does not *ipso facto* make them parties to the proceeding.'

''Affording some indication of the common understanding of the above law as it applies to judges *pro tempore*, it may be noted, though not suggested as more than of persuasive force, that the jurisdiction of courts presided over by judges *pro tempore* under similar circumstances has been assumed and taken for granted both by the courts and the litigants in each and all of the cases which have come up on appeal except the Toby case, *supra.* (For illustration, see *Estate of Price,* 138 Cal. App. 462 [32 Pac. (2d) 994]; *Estate of Rozen-Goldenberg,* 1 Cal. App. (2d) 631 [37 Pac. (2d) 132]; *Estate of Price,* 136 Cal. App. 257 [28 Pac. (2d) 717]; *Estate of Giambastiani,* 1 Cal. App. (2d) 639 [37 Pac. (2d) 142]; *Estate of Mahn,* 2 Cal. App. (2d) 111 [37 Pac. (2d) 478].)

''All of the above has been stated in support of our decision that nonappearing heirs and legatees and creditors are not parties to a probate proceeding. ▮ It is even more obvious that they are not 'parties litigant'. Under the customary rules of constitutional interpretation each word should be given some value. In the constitutional provision the word 'litigant' qualifies the word 'parties' and the two words must be given some value beyond the one word 'parties'. Obviously the phrase 'parties litigant' means the parties who are taking part in the litigation,—those who have appeared therein. There are many causes at law and in equity where the rights of parties are determined although the parties themselves do not conduct the litigation. These actions, where contested, proceed under the direction of parties to the controversy who have appeared—who are 'parties litigant'. At the same time the proceeding determines the rights of other parties in interest but not litigant. Among such cases are receiverships, representative suits, actions by and against trustees, and, assuming that nonappearing heirs and devisees and creditors are parties, then the several proceedings in probate.

" 'Parties litigant, a term which has been construed to mean the antagonistic sides of a controversy.' (47 Cor. Jur. 246.) 'Litigant. A party to a lawsuit; one engaged in litigation; usually spoken of active parties, not of nominal ones.' (Black's Law Dictionary.) Webster gives 'litigant' the same meaning as 'one engaged in a law suit; as, parties litigant'. Courts in other jurisdictions have upheld the authority of special judges to act upon the agreement of the active parties to the litigation, although other persons' interests may be affected. (*Landrum* v. *Chamberlin,* 73 Ga. 727; *Pottlitzer* v. *Citizens Trust Co.,* 60 Ind. App. 45 [108 N. E. 36]; *Jensen* v. *Angeles B. & M. Co.,* 87 Wash. 392 [151 Pac. 825].) In *Ernest* v. *Canary,* 139 Okl. 128 [281 Pac. 574], a probate proceeding tried by a special judge was held to be valid. Active parties to the litigation may bind passive parties by stipulation. (*State* v. *Mart,* 135 Or. 603 [283 Pac. 23, 295 Pac. 459]; *Zeitinger* v. *Hargadine etc. Co.,* 309 Mo. 433 [274 S. W. 789].)

"While a judge *pro tempore* is selected under the stipulation of the parties litigant by the approval and order of a 'regular' judge, still, when acting, the judge *pro tempore* is acting for the superior court. The judgments and orders of the superior court, a judge *pro tempore* presiding, are entitled to the same presumption of regularity as a court with a regular judge presiding. Consequently the failure of the record herein to show that certain heirs or litigants stipulated in writing or orally to the selection of the judge *pro tempore,* in the absence of any showing in the record that they did not stipulate, is ineffective to refute the presumption of the regularity of the proceedings. Special judges are presumed to have been properly selected. (*In re Corralitos Cooperative Co.,* 130 Cal. 570 [62 Pac. 1076]; *People* v. *Ah Lee Doon,* 97 Cal. 171, at 177 [31 Pac. 933], citing Code Civ. Proc., sec. 1963; *In re Newman's Estate,* 75 Cal. 213, 221 [16 Pac. 887, 7 Am. St. Rep. 146]; *People* v. *Mellon,* 40 Cal. 648, 655.) This is the general rule. (33 Cor. Jur., secs. 235, 236, p. 1026; *State* v. *Sachs,* 3 Wash. 691 [29 Pac. 446].) The constitutional provision authorizing judges *pro tempore* does not require a *written* stipulation. Stipulations made in open court when required for the regularity of an order are presumed, in the absence of a contrary showing affirmatively presented on the record. (*Leadbetter* v. *Lake,* 118 Cal. 515 [50 Pac. 686]; *Mulcahy* v. *Glazier,* 51 Cal.

626.) ■ Under the authority of the McDougald case, *supra,* the failure of heirs and legatees to appear will be considered 'as consenting' that the account may be settled. . . . " ■ Furthermore, under our system, the administrator represented the heirs (*Dennis* v. *Bint,* 122 Cal. 39, 44 [54 Pac. 378, 68 Am. St. Rep. 17]; 11B Cal. Jur., p. 83), and the stipulation is binding on them.

In the Toby case, *supra,* the order annulled was one made, or purporting to be made, by a judge *pro tempore,* vacating a decree of settlement of account and *final distribution.* The petitioners for the writ of review were heirs to whom distribution had been made in the *decree of distribution.* It was held, in effect, that such distributees were not bound by the proceeding before a person appointed judge *pro tempore,* where consent to such appointment had not been given by the distributees or by any person authorized by them; and it was held further that the attorney, representing the estate and administratrix only, was not authorized to bind the distributees by assuming to make stipulation in their behalf. The decision in the Toby case, limited in its application to the rights vested in distributees named in a duly entered decree of distribution, is not necessarily in conflict with the principles recognized in our decision in the instant case.

■ Considering the facts otherwise relevant to the appeal, it appears that the respondent, Alice Cassidy, was duly appointed the executrix of the last will and testament of Louise M. Kent, deceased, who left an estate consisting of real property, personal property, cash and stocks, all of the appraised value of $12,839.38. After serving for three years, Alice Cassidy was removed from her position as executrix, and an administrator with the will annexed was appointed in her place. After her removal, she filed her account, to which the administrator with the will annexed (appellant here) filed objections as to certain items, on the grounds that the former executrix had been negligent in failing to care for and in not renting nor attempting to rent the real property; that she was liable for failure to account for certain funds held in trust for the estate, and for losses accruing through carelessness and negligence in failing to sell listed stocks of the estate. After examining the account and considering the objections, the trial court made and filed its findings which are in accord with the evidence. The final

and supplemental account of the executrix was corrected to allow her certain credits, not first claimed, due to established errors, and was surcharged as to certain items specially noted in the findings. Briefly, these were that for over thirty-three months the executrix carelessly and negligently allowed the real property belonging to the estate to remain idle, resulting in a loss to the estate of one thousand and five dollars; that she failed to pay out of a trust fund, created by the deceased for the specific purpose, the funeral expenses of the decedent amounting to three hundred seventeen dollars and sixty cents. The order settling the account directs the former executrix to pay only these amounts to the present administrator with the will annexed. The findings as to the alleged losses to the estate through the failure of the executrix to sell the stocks belonging to the estate are full as to the various stocks and the transactions had by the executrix concerning them. There is no finding that any loss to the estate was caused thereby. From the order thus settling the account the administrator with the will annexed has appealed.

We may conclude, from the dates when certain of the stocks were sold by the executrix, and later by the administrator with the will annexed, and by the period during which the executrix had control of the stocks, that the trial court was of the view that the executrix was not legally, or properly, liable for any losses resulting through sales of stock which came into her possession when the financial depression of the nation was at its lowest depths.

The order appealed from is affirmed.

Shenk, J., Conrey, J., Curtis, J., Langdon, J., and Seawell, J., concurred.

Rehearing denied.