STATE ex rel. DAVE MIDDLEMAS, Sheriff of Lewis and Clark County, Montana, Relator, v. DISTRICT COURT of the County of Lewis and Clark, et al., Respondents.

No. 9681.

Submitted March 23, 1956. Decided March 29, 1956.

295 Pac. (2d) 233.

74

Mr. Clarence Hanley, Helena, for relator.

Messrs. Loble & Loble & Gene A. Picotte, Helena for Respondents.

Mr. Hanley and Mr. Picotte argued orally.

MR. CHIEF JUSTICE ADAIR:

Prohibition. This is an application by the State of Montana on the relation of Dave Middlemas, as sheriff of Lewis and Clark County, Montana, for a writ of prohibition to be directed to the District Court of the First Judicial District of the State of Montana, in and for the County of Lewis and Clark and the Honorable George W. Padbury, Jr., a judge presiding therein, respondents, to prohibit and prevent further proceedings alleged to be without and in excess of the jurisdiction of the respondent tribunal and judge. R.C.M. 1947, section 93-9201.

Upon the filing of relator's application and affidavit this court issued and caused to be served its alternative writ of pro-

hibition forbidding further proceeding by respondents until further order of this court and requiring that they show cause at a time certain why a peremptory writ should not issue making the prohibition absolute and permanent.

At the time set for hearing the return of the alternative writ the relator appeared in person and by counsel and the respondents appeared through their counsel by interposing a motion to quash the alternative writ but without serving or filing any answer as is provided for in R.C.M. 1947, sections 93-9204 and 93-9106.

The matter arose out of proceedings involving the dissolution of the marriage of Anne M. Bishop and George Arthur Bishop.

The facts, as set forth in relator's affidavit and application for the writ herein, are as follows:

In an action for divorce commenced and prosecuted in the respondent district court by the plaintiff wife against her defendant husband entitled "Anne M. Bishop, Plaintiff v. George Arthur Bishop, Defendant" decree was given and entered for the plaintiff and against the defendant.

By the terms of such decree the plaintiff was granted an absolute divorce from the defendant,—she was awarded the custody of the two infant children of the marriage and the defendant father was required to pay to the plaintiff a specified sum each month for the care, maintenance and support of said children.

On August 8, 1953, on application therefor and after hearing had before him, in the respondent district court, the Honorable George W. Padbury, Jr., one of the two duly elected judges of the respondent district court, ordered that the original decree be modified and amended by reducing the monthly payments ordered for the care, support and maintenance of the two children of the parties litigant to $60 per month to be paid in installments of $30 each and every month commencing on the 1st day of August 1953 and by further providing that the plaintiff mother may remove either or both children from the State of Montana without the consent of the defendant father had or

obtained but subject, however, to the granting by the respondent court of its written permission for such removal.

On July 12, 1955, on the plaintiff mother's petition and a supporting certificate by plaintiff's attending physician, the Honorable Victor H. Fall, the other duly elected judge of the respondent district court, made and caused to be entered an order permitting and authorizing the plaintiff mother to remove both children from the State of Montana as was provided in the decree as amended by Judge Padbury's above order of August 8, 1953.

On August 11, 1955, Judge Padbury issued an order restraining the plaintiff mother from removing the children from the State of Montana and requiring that on September 14, 1955, plaintiff show cause why she should not be permanently enjoined from removing the children from the State of Montana and why the decree of divorce should not be further modified and amended so as to award the absolute care, custody and control of both infants to the defendant father.

Relator's petition further represents that it was not until after the service on the plaintiff mother of his temporary restraining order of August 11, 1955, that Judge Padbury's attention was called to Judge Fall's previous order of July 12th, permitting the removal of the children from this state and that upon learning of such order of July 12th, Judge Padbury advised plaintiff's counsel that in view of the fact that his attention had not theretofore been called thereto, plaintiff was permitted to leave this state regardless of the provisions of the temporary restraining order, so served upon her on August 11th.

On August 18, 1955, Judge Padbury made a further order in the divorce action whereby the defendant father was relieved from the obligation of paying to the plaintiff mother any money whatsoever under the respondent court's decree until such time as the plaintiff mother returned the children to the State of Montana.

On November 12th the order to show cause so issued by Judge Padbury on August 11, 1955, came on for hearing before Judge

Fall, presiding in Department No. II of said district court wherein the divorce action and matter was pending and, after hearing the matter and taking the same under advisement, Judge Fall, on November 25th made and caused to be entered in the action written findings of fact, conclusions of law and an order based thereon whereby the decree and judgment as modified and amended by Judge Padbury's order was declared to be and remain in full force and effect and also providing that the plaintiff mother be permitted to keep and maintain the children with her and in her custody in the State of California until further order of the court, with the right in the defendant father to visit them at all reasonable times and places and also ordering that the defendant George Arthur Bishop renew the payments for the support and maintenance of the children as is provided in the amended decree, such payments to be paid to the clerk of the district court in installments of $30 on the 1st and 15th days of every month, the first payment to be made on the 1st day of December 1955.

The order of November 12th further awarded the plaintiff mother her costs in the sum of $50 expended in obtaining depositions submitted on her behalf on November 12th at the hearing before Judge Fall, such sum to be paid not later than January 1, 1956, and the order also set aside Judge Padbury's temporary restraining order of August 11th.

*Disqualification of Judge Fall.* On December 12, 1955, the defendant father filed an affidavit disqualifying Judge Fall for imputed bias and prejudice, whereupon Judge Fall made an order transferring the said action from Department No. II over which he presides to Department No. I of said court over which Judge Padbury presides.

On February 1, 1956, on the accusatory affidavit of the plaintiff mother filed in the action, Judge Padbury issued an order to show cause returnable on February 7, 1956, citing the defendant father to show cause why he should not be adjudged in contempt for his failure to obey the order of Judge Fall so made and entered on November 25, 1955.

*Disqualification of Judge Padbury.* On February 2nd Judge Padbury made and caused to be entered, in said court and cause, an order reciting that he deemed himself disqualified to proceed further in the matter and that the Honorable John B. McClernan, a duly elected judge of the second judicial district of the State of Montana, in and for the County of Silver Bow, was invited to assume jurisdiction of the action and to hear, try and determine all matters in connection therewith.

On February 4th Judge McClernan, acting on Judge Padbury's call and invitation, accepted jurisdiction of and in said action.

*Disqualification of Judge McClernan.* However, before Judge McClernan's written acceptance of jurisdiction was received for filing in the office of the clerk of said district court, the defendant father filed in said district court and cause, his affidavit disqualifying Judge McClernan for imputed bias and prejudice.

*Judge Loucks Called.* On February 8th Judge Padbury made an order calling in the Honorable Jack R. Loucks, a duly elected judge of the fifteenth judicial district of the State of Montana, and on February 10th Judge Loucks by written order accepted the call and assumed jurisdiction in the case.

The said order to show cause and citation for contempt so issued by Judge Padbury and directed to and served upon the defendant George Arthur Bishop came on regularly for hearing on February 14th before Judge Loucks, at which time the plaintiff mother appeared through her counsel and the defendant father appeared in person and also by his counsel. Evidence was introduced on behalf of both plaintiff and defendant and the matter was submitted to Judge Loucks and by him taken under advisement.

Thereafter on March 9th Judge Loucks made and caused to be filed and entered his order adjudging that the defendant George Arthur Bishop was guilty of contempt for failure to obey the court's order of November 25, 1955, and ordered that said defendant, George Arthur Bishop, be confined in the county

jail of Lewis and Clark County for a period of five days and that he pay a fine in the sum of $50 or in default thereof that said defendant be confined in said county jail at the rate of one day for each $2 of said fine, and further ordering that the execution of said fine and sentence be stayed until the 17th day of March 1956, during which time the defendant might purge himself of said contempt by paying into the court the sum of $150 for the benefit of the plaintiff mother, and that if not so paid on or before said date the defendant father shall be committed to the county jail of Lewis and Clark County until there has been a compliance with the district court's order of November 25, 1955.

The defendant failed and omitted to make any of the payments ordered,—he has not sought to have Judge Louck's action reviewed on certiorari, R.C.M. 1947, section 93-9814; State ex rel. Porter v. First Judicial District, 123 Mont. 447, 215 Pac. (2d) 279, and the order continues in full force and effect.

On March 19th the defendant, George Arthur Bishop, voluntarily presented himself at the county jail of Lewis and Clark County, Montana, and to the relator Dave Middlemas, sheriff of said county, to there serve the judgment, order and sentence rendered against him and imposed upon him by Judge Loucks' adjudication and order of March 9th, and pursuant to and by virtue of a duly certified copy of such adjudication and order delivered to the relator, Dave Middlemas as sheriff of Lewis and Clark County, the defendant George Arthur Bishop was thereupon and has since been confined in said county jail serving the sentence so imposed.

At about the hour of 2:30 o'clock p.m. on March 20th, a petition for a writ of habeas corpus, entitled ''In the Matter of the Application of George Arthur Bishop for a writ of Habeas Corpus'' was filed in the respondent district court and shortly before 3:00 p.m. on said day and in response to defendant's petition therefor Judge Padbury caused a writ of habeas corpus to issue out of the respondent district court directed to the relator Dave Middlemas as sheriff of Lewis and Clark County, Montana,

commanding that relator have the body of the petitioner, George Arthur Bishop, together with the time and cause of his imprisonment and detention, before the respondent district court at the hour of 3:00 o'clock p.m. on that same day, March 20th, to do and receive what shall then and there be considered and determined concerning the petitioner, George Arthur Bishop, and, in compliance with such mandate the relator did have the petitioner before the respondent district court at the time ordered, whereupon, at relator's request the hearing on the matter was continued to the following day.

On March 21st and prior to the time to which the hearing on the writ of habeas corpus had been continued relator commenced this original proceeding in the supreme court invoking its original jurisdiction to issue the writ herein.

In their motion to quash the alternative writ of prohibition herein the respondents challenge the jurisdiction of this court to employ such writ to interfere with the issuance or hearing by respondents of the writ of habeas corpus.

*Jurisdiction.* The source of the jurisdiction of the supreme court is found in sections 2 and 3 of Article VIII of the Constitution of Montana. Bordeaux v. Bordeaux, 26 Mont. 533, 535, 69 Pac. 103.

"Except as otherwise provided in the constitution, this court has appellate jurisdiction only. Section 2, art. 8, Const. It has power, in its discretion, to issue, and to hear and determine, writs of prohibition. Section 3, Id." State ex rel. Kennedy v. Martin, 24 Mont. 379, 381, 62 Pac. 493, 494, 51 L.R.A. 958.

The supreme court "shall have power in its discretion to issue and to hear and determine writs of * * * prohibition and injunction, and such other original and remedial writs as may be necessary or proper to the complete exercise of its appellate jurisdiction." Mont. Const. art. VIII, section 3.

"The supreme court * * * shall have a general supervisory control over all inferior courts, *under such regulations and limitations as may be prescribed by law.*" Emphasis supplied. Mont. Const. art. VIII, section 2.

The above concluding phrase, namely *"under such regula-*
[1] *and limitations as may be prescribed by law"* means
as prescribed by the state legislature. Howard v. Cook, 59 Idaho
391, 396, 83 Pac. (2d) 208, at page 210.

Section 2 of Article VIII of the Constitution expressly grants
to the supreme court the general power, authority and juris-
diction to oversee, superintend and supervise "all inferior
courts" of this state. The grant includes the power, authority
and jurisdiction to exercise a general over-seeing, superintend-
ing and supervisory control of all the district courts of this
state of which the respondent district court is one.

Among the devices prescribed for the exercise by the supreme
 court of its power and jurisdiction to superintend and
control proceedings in the district courts is the ancient writ of
prohibition for which the legislature has made provision by its
enactment of sections 93-9201 to 93-9204 and 93-9105 to 93-9114
of the Revised Codes of Montana of 1947.

The legislature has provided:

"The writ of prohibition is the counterpart of the writ of
mandate. It arrests the proceedings of any tribunal * * * or
person, whether exercising functions judicial or ministerial,
*when such proceedings are without or in excess of the jurisdic-*
*tion of such tribunal * * * or person."* Emphasis supplied.
R.C.M. 1947, section 93-9201.

"The same may be issued by the supreme court * * * to
any inferior tribunal * * * or person, *in all cases where there*
*is not a plain, speedy, and adequate remedy in the ordinary*
*course of law."* Emphasis supplied. R.C.M. 1947, section 93-
9202.

"Any * * * judge * * * must not sit or act as such in any
action or proceeding:

"1. To which he is a party, or in which he is interested;

"2. When he is related to either party by consanguinity or
affinity within the sixth degree, computed according to the
rules of law;

"3. When he has been attorney or counsel for either party

in the action or proceeding, or when he rendered or made the judgment, order, or decision appealed from;

"4. When either party makes and files an affidavit as hereinafter provided, that he has reason to believe, and does believe, he cannot have a fair and impartial hearing or trial before a district judge by reason of the bias or prejudice of such judge. * * *" R.C.M. 1947, section 93-901.

It "is clear that under a statute such as ours, which pro-
[3] ▇▇▇ a judge who is interested from sitting or acting, any judgment or order rendered or made by such judge is without jurisdiction and void." Gaer v. Bank of Baker, 111 Mont. 204, at page 208, 107 Pac. (2d) 877 at page 879.

In State ex rel. Brandegee v. Clements, 52 Mont. 57, 61, 155 Pac. 271, 273, this court, in speaking of the writ of habeas corpus said: "The writ is a high prerogative one, the disposition of the proceeding is not directly subject to review, *and the greater necessity therefore exists for the hearing of it by a judge whose impartiality cannot be questioned.*" Emphasis supplied.

In State ex rel. Moser v. District Court, 116 Mont. 305, 313, 314, 151 Pac. (2d) 1002, 1006, this court said:

"It is our view that there is no material difference between a voluntary disqualification of a judge and disqualification by the affidavit of prejudice. * * *

"When a trial judge has been disqualified in a particular case by affidavit of prejudice by a litigant, his jurisdiction in the premises is taken away and he can exercise only those powers expressly reserved to him by statute, namely, arrangement of the calendar, regulate the order of business, power to transfer the cause to another court, or call in another judge. * * * Where, as in the instant matter, a trial judge on his own motion called in another judge, neither constitutional nor statutory provisions enumerate any powers reserved by the judge who issues the call, but by anology and by necessity we think that there could be no more power left in the judge who makes the call voluntarily in the one case than if he were deprived of jurisdiction by the filing of an affidavit of prejudice. We there-

fore hold that Judge Hattersley had no jurisdiction over the case of Gibbs v. Fuller at the time the alleged contempt occurred nor power to cite relator for contempt * * * .''

In the case of In re Hudson Lumber Co., 301 Mich. 77, 3 N.W. (2d) 17, 19, the Supreme Court of Michigan said:

"In Hall v. Thayer, 105 Mass. 219, 7 Am. Rep. 513, it is said: ' ''The right of every citizen to be tried by judges as free, impartial and independent as the lot of humanity will admit,'' rests upon a principle so obviously just, and so necessary for the protection of the citizen against injustice, that no argument is necessary to sustain it, but it must be accepted as an elementary truth.'

''Similar judicial expression of the prerogative of litigants to have their rights heard and determined by an impartial tribunal, free from bias, prejudice and interest, are to be found pervading the opinions of all courts where the issue has been raised. It is a principle so elementary in nature that the application thereof is not open to question.

''* * * The extreme importance of the underlying issue to the administration of justice should prevent parties from being required to submit the determination of their rights to a judge who has previously confessed his disqualification to hear the issues involved.''

Zuniga v. Superior Court, 1955, 77 Ariz. 222, 269 Pac. (2d) 720, 721, holds that a ''judge may on his own motion, if he acts timely, recuse himself even though the reason given might not be sufficient to form the basis of a legal disqualification.''

In State ex rel. Kline v. Eighth Judicial District Court, 70 Nev. 172, 264 Pac. (2d) 396, at page 398, the court said: ''The essence of recusation is the possession by the judge of an attitude which may impair his impartiality in the cause before him. Assuming that attitude to exist, whether it be one of prejudice against one litigant or, on the other hand, be one of bias or favor towards the other litigant would seem to be of little moment. In either event the result would be the same— lack of impartiality.''

In State ex rel. Urga v. Grayson, Fla. 1955, 80 So. (2d) 679, 680, the court held that a trial judge "had power to recuse himself and his order doing so was not only valid, but it took him out of the case and opened the way for substitution of another judge to try it."

In State ex rel. Heard v. Sullivan, 206 Okl. 43, 240 Pac. (2d) 1109, 1110, the court said: "Where there are circumstances of such a nature as to cause doubts as to a judge's partiality, bias or prejudice, it is his duty to disqualify, notwithstanding the fact that he personally believes himself to be unprejudiced, unbiased and impartial." Also see State ex rel. Larecy v. Sullivan, 207 Okl. 128, 248 Pac. (2d) 239.

In Callaham v. Childers, 186 Okl. 504, 99 Pac. (2d) 126, 127, in issuing a writ of mandamus requiring a district judge to certify his disqualification to sit as a trial judge in a divorce action, the appellate court said: "From the viewpoint of the public at large, and therefore from the practical viewpoint from which respect for the courts is surveyed and shaped, a judge should not preside over any trial, and especially a non-jury trial, when the circumstances are such as would or might tend to excite popular suspicion."

In Cotulla State Bank v. Herron, Tex. Civ. App., 202 S.W. 797, 798, it is said: "It is to be regretted that a judge should try a case in which there is the least ground upon which to base a claim for his disqualification, and, if an error is ever made as to disqualification, it should be in favor of the disqualification rather than against it. An independent, unbiased, disinterested, fearless judiciary is one of the bulwarks of American liberty, and nothing should be suffered to exist that would cast a doubt or shadow of suspicion upon its fairness and integrity."

State ex rel. Brookfield Co. v. Mart, 135 Or. 611, at pages 613-614, 295 Pac. 459, at page 460, involved a contempt proceeding. The pertinent facts are: The Brookfield Company, plaintiff, brought a suit in equity in the circuit court against the defendant Mart, alleging ownership in plaintiff of certain city

warrants and a certain sum of money received by defendant for plaintiff's use, which plaintiff sought to recover. Upon the filing of the complaint, an ex parte mandatory injunction was issued by Judge H. K. Zimmerman of said court ordering defendant to forthwith deposit with the clerk of the court the sum of money and the warrants demanded, and enjoining defendant from transferring the warrants. Immediately after the service upon his of the complaint, summons and mandatory injunction, defendant filed a timely affidavit of disqualification against Judge Zimmerman. The defendant failed to comply with the mandatory injunction and for such failure he was cited and arrested for contempt.

Upon being brought before the court the defendant challenged the authority and jurisdiction of the disqualified Judge Zimmerman to hear or determine the contempt proceedings. Judge Zimmerman overruled the challenge, found the defendant guilty and sentenced him to imprisonment in the county jail until the warrants and money were deposited with the county clerk. He was also fined $100 and sentenced to imprisonment in the county jail, one day for each $2 of said fine until paid. Upon its review of the proceeding the supreme court said:

"Under such circumstances, defendant had a clear right, if the facts were such as to justify him in so doing, to apply to a circuit judge not disqualified for the modification or discharge of the injunction order. This relief could be granted only upon an application made in the equity suit and by a judge sitting in that suit who was not at the time disqualified.

"The sole object of instituting the contempt proceedings, and the only purpose such proceedings could accomplish, was to enable plaintiff to obtain the remedy sought in the equity suit. The contempt, therefore, was a civil, and not a criminal, contempt. Under such circumstances, we are unanimously of the opinion that, after the filing of the affidavit of prejudice, Judge Zimmerman was as much disqualified to order the arrest of the

defendant or to sit and try the contempt proceedings as he was to proceed in the trial of the equity suit.''

Among the regulations and limitations prescribed by the legislature governing the granting of a writ of habeas corpus are the provisions of R.C.M. 1947, section 94-101-4, providing that, ''Any * * * judge *authorized* to grant the writ to whom a petition therefor presented, must, if it appear that the writ ought to issue, grant the same without delay.'' Emphasis supplied.

A judge *authorized* to grant the writ is one who at the time ▆ the petition for the writ is presented to him, is clothed with the essential authority or legal power to give him the right, under the law, to sit, hear and act on the petition.

By recusing himself on February 2nd and calling in Judge ▆ Loucks who accepted the call and assumed jurisdiction in the case of Bishop v. Bishop, the respondent judge, under R.C.M. 1947, section 93-901, became, was and continues to be divested of all right, authority or power to further sit or act in judgment therein including the right or authority to sit in judgment on Judge Loucks' order adjudging and committing Bishop for contempt. The disqualified respondent judge is not a judge authorized to sit or act in judgment on Bishop's petition for a writ of habeas corpus involving as it does the necessity for judicially determining the validity of Judge Loucks' order committing Bishop for contempt and the identical issue involved in both the divorce and contempt proceedings.

We find no merit in respondents' motion to quash the alternative writ of prohibition issued out of this court and such motion is denied.

A peremptory writ of prohibition directed to the respondent judge will issue ordering that he proceed no further in said habeas corpus matter. It is so ordered.

MR. JUSTICES ANDERSON and BOTTOMLY, concur.

MR. JUSTICE ANGSTMAN: (concurring specially).

I concur in the result reached in the foregoing opinion,

particularly since we were advised on the oral argument before this court that the principal, if not the only, ground of contesting by habeas corpus the imprisonment of Bishop, is his alleged inability to make payment of the sums due under the decree of divorce as modified. That was one of the issues, if not the only issue, before Judge Loucks in the contempt matter in which Judge Padbury ruled that he (himself) was disqualified. The issues in the two proceedings being shown to be identical, if we assume that the issue of ability to pay can again be litigated, but see State ex rel. Houtchens v. District Court, 122 Mont. 76, 199 Pac. (2d) 272, his disqualification in the one proceeding disqualified him in the other also.

I do not subscribe to the conclusion implied in the foregoing opinion that all habeas corpus proceedings arising out of contempt matters are a part of the contempt proceedings. To so hold would imply that the only judge who could entertain habeas corpus proceedings arising out of a contempt order is the one who made the contempt order, because when once a judge assumes jurisdiction of a proceeding he retains it for all purposes unless subsequently disqualified.

I concur in the result reached in the foregoing opinion for another reason. As early as 1894 this court held that habeas corpus is not available to review the action of the court in imprisoning defendant in a divorce action for contempt in disobeying the court order requiring the payment of alimony. State ex rel. Nelson v. District Court, 14 Mont. 396, 40 Pac. 66. The same rule should apply as to contempt for failure to pay support money for minor children.

MR. JUSTICE DAVIS: (concurring).

I agree that Judge Padbury is disqualified to sit or act judicially in the habeas corpus proceeding brought by the petitioner Bishop. I agree also with the necessary conclusion which follows upon the opinion written by the Chief Justice, namely, that Judge Padbury's disqualification is such that he was not an authorized judge within the meaning of R.C.M. 1947, sec-

tion 94-101-4, who could issue the writ here, as he did, when Bishop's petition was first presented to him, and that accordingly that writ as it went to the relator was void, and should now be annulled by our writ of prohibition together with all else that Judge Padbury has assumed to do in the matter. Compare State ex rel. Thompson v. District Court, 57 Mont. 432, 188 Pac. 902; State ex rel. Redle v. District Court, 102 Mont. 541, 546, 59 Pac. (2d) 58.

My reasons for the opinion I have are these: When Judge Padbury voluntarily disqualified himself on February 2, 1956, in the contempt proceeding brought against Bishop, he said in effect and on the record that because of some undisclosed fact known to him he could not fairly and impartially try any issue involved in the contempt there charged. I do not need to speculate what that fact is nor why Judge Padbury was disqualified thereby.

It is enough that he is disqualified by his own admission; the law does not require him to be more specific. Moreover, even though a contempt proceeding be criminal or quasi criminal in its nature, Judge Padbury may, nevertheless, in fact be disqualified from presiding therein, may himself make the fact of his disqualification known, and may thereby effectively divest himself of jurisdiction in the matter. The rule is no different here than in another proceeding civil in its nature. State ex rel. King v. District Court, 95 Mont. 400, 406, 26 Pac. (2d) 966; State v. Roberts, 130 Kan. 754, 288 Pac. 761; State v. Huett, 340 Mo. 394, 104 S.W. (2d) 252.

Judge Padbury's disqualification to hear the charge of contempt brought against Bishop is, however, collateral to the fundamental question which faces us in the proceeding presently before us. Here our inquiry is whether Judge Padbury is disqualified to hear and determine Bishop's petition for a writ of habeas corpus, which prays his release from the Lewis and Clark county jail where he is confined under Judge Loucks' commitment for the very contempt which Judge Padbury admittedly could not try. His disqualification in the contempt matter is

then of importance only insofar as it bears upon his jurisdiction to hear the petition for habeas corpus. But that his disqualification in the one proceeding does directly reflect his disqualification in the other admits of no doubt in my view of the case. In other words here I find the short answer to our present problem.

This court has held in State ex rel. Brandegee v. Clements, 52 Mont. 57, 155 Pac. 271, that a district judge may be disqualified to sit in a proceeding seeking the issuance of the writ of habeas corpus. This court has also held that the disqualification of a district judge to sit in a probate matter may be made to appear by facts shown outside of and beyond the record in the proceeding as to which the disqualification is worked. Gaer v. Bank of Baker, 111 Mont. 204, 107 Pac. (2d) 877. In any such case a judge disqualified is without power to act. If he does act judicially at all, all he does is null and void. Whatever may be the rule at common law or elsewhere today in other common law jurisdictions under their statutes or codes, with us it is clear that a judge who is disqualified is without jurisdiction. Judicial proceedings taken before him are therefore not merely voidable. They are nullities. State ex rel. Brandegee v. Clements, supra; Gaer v. Bank of Baker, supra. This rule and these decisions in this court are in my view controlling without more of the disposition we must make of the proceeding at bar.

That is, Bishop's petition for a writ of habeas corpus, as far as it goes, tenders issues which are substantially identical with those presented for decision by the charge of contempt heard by Judge Loucks. Because of his admitted disqualification Judge Padbury was without jurisdiction to try any issue involved in this contempt. Necessarily then he is likewise disqualified, i. e., without jurisdiction, to hear or rule upon any of the same issues brought before him by Bishop's petition for habeas corpus, and for the same reasons which prompted his disqualification in the contempt matter. What he did then in acting upon the petition for habeas corpus, particularly in issuing the writ to the relator was legally without effect. I see no escape from this conclusion.